# WASATCH MINING COMPANY, RESPONDENT, *v.* PRISCILLA JENNINGS ET AL., APPELLANTS.

MINES—BONA FIDE CLAIMANT—IMPROVEMENTS—EQUITY PRACTICE—
REFERENCE—FINDINGS—NEW TRIAL—RECORD.

1. Defendants having taken possession of plaintiff's mine with its consent, and having worked it and sold ores extracted, and having received the proceeds, believing they had a right to, upon a decree returning the mine to the owner such defendants should be allowed to retain the reasonable cost of extraction, expenditures of sampling, transportation and sale; and, in addition, they should be compensated reasonable expenditures for its preservation, development, and permanent improvement, to the extent its value was enhanced thereby.

2. The findings of a referee, and a decree of the court thereon, upon a motion for a new trial entered within the time given by the statute, may be set aside by the court at a subsequent term.

3. The trial court has the power to make the record of the case correspond with the actual ruling, notwithstanding an appeal may have been taken to the supreme court.

4. In an equity cause, the court may, upon motion entered in due time, vacate a decree, and treat a verdict of a jury or the findings of a referee as advisory, and make such findings as the evidence may warrant, and enter a decree thereon.

5. Where a case has been heard by a referee, the court may, upon motion for a new trial, or exception taken in due time, hear either, or he may require the motion or exception to be submitted in the first instance to the referee, but such submission will not deprive either party of the right to have such motion or exception afterwards decided by the court.

(No. 705.   Decided Dec. 8, 1896.)

Appeal from the Third district court, Territory of Utah.   Hon. S. A. Merritt, *Judge.*

Action by the Wasatch Mining Company against Priscilla P. Jennings and others for an accounting. From a decree for plaintiff defendants appeal. *Modified.*

This cause came before the supreme court of the territory and is reported in 5 Utah 243, where the briefs are quite fully given.

*Rawlins & Cutchlow,* for appellants.

The court had no authority to vacate the former judgment *except for the purpose of granting a new trial.* 2 C. L. U. 1888, sec. 3400.

In this case the plaintiff abandoned and waived its application for a new trial, and the court, at its request, ignored and disregarded the same and made an order without any motion or proceeding authorized by law.

A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury or court or by referee. 2 Comp. Laws, sec. 3399.

Where by consent of the parties a case has been referred to a referee for trial, upon whose report a judgment has been entered, if the judgment is vacated and a new trial ordered, such order does not vacate the order of reference, and the new trial or further proceedings in the case must be before the same referee. *Catlin* v. *Adirondack Co.,* 81 N. Y. 379.

The court after the term cannot of its own motion or otherwise set aside the findings of a referee and a judgment based thereon and make new findings and enter judgment thereon. *Walker* v. *Campbell,* 26 Pac. Rep. 123.

Upon an application for a new trial, whether the former trial was had before a referee, the court, or a jury, the court passing upon the application for a new trial has no authority to vacate the former judgment and then proceed without trial to find the facts and enter a judgment thereon. *Schroeder* v. *S. L. C. V. G.,* 60 Cal.

467 to 471; *Ehrichs* v. *Dennill*, 75 N. Y. 370; *Walstenholme* v. *Walstenholme Mg. Co.*, 64 N. Y. 272; *Foote* v. *Life Ins. Co.*, 61 N. Y. 571.

*J. G. Sutherland*, *W. H. Dickson*, and *John M. Zane*, for respondent.

ZANE, C. J.:

It appears from the record in this case that the plaintiff was the owner of a mine consisting of the Walker & Walker Extension and Bucky mining claims, and a part of the Pinion claim, and that they were sold upon execution against the plaintiff; that William Jennings and John Clark, two of the stockholders and directors of the plaintiff, took an assignment of the certificate of purchase, before the time of redemption had expired, for the consideration of $864.05, and that they afterwards obtained a deed to them of the officer, and that the sum so paid, and the assignment and deed, were taken with a verbal understanding between the plaintiff and the assignees that the latter, upon reimbursement within a time named, would convey to the former; that Joseph A. Jennings and Isaac Jennings obtained Clark's interest in the property; and that they, with William Jennings, took possession of it, and personally or by leases operated the same until early in 1883. This case was before the supreme court of the late territory, and the decree from which that appeal was taken was reversed; but we regard all the questions of law, and all the questions of fact, except one, as the case then stood, settled by that decision. *Mining Co.* v. *Jennings*, 5 Utah 245. In that opinion the court held that the alleged contract, as proven, under which Jennings and Clark obtained the certificate and deed, was not within the statute of frauds, and the deed, though absolute in form, should be regarded

in equity as a mortgage, and that, under the circumstances of their possession and its acquisition, the rights and liabilities of the Jenningses should be determined by the equitable rules regulating the rights and duties of trustees in possession in good faith, and that, therefore, they should be held to account to the plaintiff for the ores extracted by them from the property, and the rents and royalties received, and that they should be credited with the amount paid for the certificate, and the reasonable expenditures in extracting the ores and converting them into money, and other expenditures upon the property, to the extent that they enhanced its value. The case was remanded, with directions to the court below to ascertain the amount of the expenditures of this last-mentioned class; but that court made a general reference of the case to a referee, who, upon consideration of the evidence and the report of the former referee (the late E. T. Sprague), found and reported the sum of $34,758.61, consisting of expenditures and interest thereon, due the defendants above the receipts from the sale of ores, and of rents and royalties received by and chargeable against them; and the court entered a decree against the plaintiff. But, upon a motion for a new trial by the plaintiff, the court set the decree and findings aside, but did not grant a new trial, and without further hearing, upon consideration of the evidence reported, and of the findings of the referees, Sprague and Marshall, found the sum of $13,715.43, principal, and a considerable sum of interest, due the plaintiff, above the expenditures credited to the defendants. While the issues were settled by the court, and a final decree ordered, the record before us does not show that it was signed or entered on the record; but, as no objection is made by either party, we are disposed to regard the order of the court appealed from as a final judgment, and

that the case is before us for consideration and decision.

The action of the court in making its findings and granting a decree after setting aside the findings of the referee and the decree thereon, without granting a new trial, was excepted to by the defendants, and has been assigned as error. The referee Marshall made his report of evidence and findings to the district court of the late territory, and that court entered its decree thereon; but, by virtue of section 7 of article 24 of the constitution of the state of Utah, the case was transferred to the district court of the state for such further proceedings as the law authorized. It appears that the motions to set aside the report of the referee and the decree thereon, and for a new trial, were made in due time; and, that being so, we are of the opinion that the district court of the state had jurisdiction of the case, and possessed the power to hear and decide the motion, and to make such further orders and decrees as the law authorized. Though the term at which a case is decided may terminate, the court may act upon a motion, made in due time, to set its decree and findings aside. *Spanagel* ʹv. *Dellinger,* 34 Cal. 476.

The defendants objected and excepted to the following order, and assign it as error: "In this cause, it appearing to the court, from the record in this case, that the minutes of the decision of the court herein, made on the 11th day of April, A. D. 1896, is not correct, in the respect that it recites that the court entered an order for a new trial of this cause, it is ordered that the minutes of that day be corrected so as to correspond to the opinion and decision and finding of the court on that day rendered and entered in the cause, to the effect that the report and findings of Referee Thomas Marshall, and the judgment entered thereon, be vacated and set aside, and that

a judgment be entered in this cause in accordance with the Sprague findings, so called, and the suppletory findings made and entered by this court on said last-mentioned day. It is further ordered that the decision and finding of the court, which was in writing, and was then rendered, be now filed as of said 11th day of April, 1896. Dated April 28, 1896." After the decision of the court on the 11th, and before the order of the 28th, the defendants appealed; but we are of the opinion that the court had the right to correct the record to make it correspond with the actual ruling of the court, notwithstanding the appeal; the court had the authority to make the record, which is the evidence of the decision and rulings of the court, conform to the decision and rulings as actually made; to make the evidence conform to the facts,— speak and declare the truth. Elliott, App. Proc. §§ 207-209.

The defendants insist that the court erred in adopting the Sprague findings, and in making the additional finding of $4,572, as the amount of the expenditures for work and improvements that enhanced the value of the property, and not necessary to the extraction of the ores, after setting aside the Marshall findings, and the decree thereon, without a new trial. This claim of the defendants presents two questions for decision: First, Was the court authorized to make the finding and enter a decree, without a new trial, after setting aside the Marshall findings and the decree thereon? Second, Were the expenditures made upon the property, that enhanced its value, but not necessary to the extraction of the ore, correctly estimated?

As to the question whether the court was authorized to consider the evidence reported, and make its findings and enter a decree thereon, after the findings of the

referee had been set aside, without another trial: At law, either party may demand a jury after the verdict or findings are set aside. But in equity the court may, upon motion entered in due time, set aside the decree, for sufficient reason, and treat the verdict or findings of fact as advisory, or it may wholly or in part set them aside, and make such other findings as the evidence may warrant. *Wingate* v. *Ferris*, 50 Cal. 105; *Basey* v. *Gallagher*, 20 Wall. 270. When the decree and findings are set aside because of newly-discovered evidence, an opportunity should be given to present such evidence and any rebutting evidence. The meaning of the order of reference to Referee Marshall is not plain. It says, "To hear and determine the cause, and issues thereon, as remanded by the supreme court, and to report to the court its findings of fact and conclusions of law thereon, and a decree to be entered in said cause on the testimony already taken upon the former hearing of the case." The opinion of the supreme court directed the lower court to make an additional finding,—whether work not directly contributing to the extraction of the ore, for which expenditures were made by defendants, benefited the property, and, if so, how much the property was enhanced thereby. The opinion directed the lower court to take further testimony, if necessary, but the order of reference says that the decree must be entered on the testimony already taken. We are disposed to hold that the referee, under the opinion of the supreme court and the order of reference, had the right to take additional proof, and report the evidence, with its findings of fact and conclusions of law, to the court, and that the court had authority to enter a decree upon its findings, or treat them as advisory, and make such findings as the evidence warranted, and enter a decree thereon. When a motion for a new trial is made, or exceptions

taken in due time, the court may proceed to hear the motion or exceptions, or require them to be submitted in the first instance to the referee, in order that he may grant a new trial, or sustain the exceptions and make correct findings, when he has erred in the first. This, however, would not deprive either party of the right to have the motion or exceptions passed upon by the court afterwards.

With respect to the second question: Were the expenditures made upon the property, that enhanced its value, but not necessary to the extraction of ore, correctly estimated by the court? This action was instituted more than 13 years ago, and the late E. T. Sprague made his report and findings of fact more than 10 years ago. Undoubtedly it was made after a careful examination of the proofs, and appears to be comprehensive and accurate, except that it does not find the amount of the expenditures that benefited the property, but which did not directly contribute to the extraction of the ore. It is as follows:

"(1) William Jennings and John Clark, the predecessors in interest of defendants, and mortgagees and trustees of the property involved in this action, in September, 1877, paid for said property the sum of $864.05.

"(2) Defendants and their predecessors in interest in said mortgage and trust, between September, 1877, and the beginning of this action, received for ores extracted from said property mortgaged and held in trust, and by them sold, rents and royalties included, the sum of seventy-eight thousand and seventy-seven and 23-100 dollars ($78,077.23). And the same was so received in the years following, to wit: In 1879, $1,086.58; in 1880, $479.77; in 1881, $12,164.34; in 1882, $56,089.78; in 1883, $8,250.76. All said receipts for 1879 were royalties received under a lease.

"(3) Defendants and their said predecessors in interest, over and above the amounts stated in the first finding, between September, 1877, and the beginning of this action, expended in and about the working, improving, and developing said mortgaged property, and in extracting, freighting, and selling ores therefrom, the sum of $93,510.36. And such expenditures were made in the years, and are classified and apportioned, as follows:

| Years. | Labor. | Sampling and As-saying. | Freight and Hauling. | All Others Including Supplies. | Totals. |
|---|---|---|---|---|---|
| 1878__ | ------------ | ------------ | ------------ | $97 81 | $97 81 |
| 1879__ | ------------ | ------------ | ------------ | 191 18 | 191 19 |
| 1880__ | $2,955 60 | $11 80 | $153 10 | 2,875 64 | 5,995 34 |
| 1881__ | 15,292 48 | 592 03 | 2,372 33 | 7,047 30 | 25,204 37 |
| 1882__ | 20,504 37 | 4,046 86 | 17,619 52 | 11,344 14 | 53,414 89 |
| 1883__ | 4,350 11 | 976 86 | 2,001 10 | 1,276 70 | 8,606 77 |
| | $43,102 56 | $5,627 55 | $22,046 05 | $22,832 87 | $93,510 37 |

"No work upon the property, other than resetting the stake thereof, and taking care of it, was done by defendants until 1880.

"(4) The total number of tons of ore extracted by defendants and their said predecessors in interest is three thousand two hundred and fifteen (3,215). The expenditure which directly contributed to the extraction of said ore, and which, if the location of the ore bodies had been known in advance of the developing work, would have sufficed to extract and raise said ore to the surface, and with the aforesaid expenditure, for hauling freight, sampling, and assaying, to convert the same into moneys received therefor as aforesaid, is eight dollars per ton, and, for said 3,215 tons, $25,720.

"(5) Not included in the foregoing, Joseph A. Jennings, one of the defendants, rendered services as superintendent, and in assisting in the working and developing of

said property, from December 1, 1879, to October 1, 1880, 10 months, and from October 15, 1882, to May 1, 1893, 6½ months,—in all, 16½ months,—and said services were worth $200 per month, making in the aggregate $3,300. Isaac Jennings, another defendant, rendered services as superintendent in the same business from January 1, 1881, to October 15, 1882, 21½ months, and said services were worth $150 per month, aggregating $3,225.

"(6) The expenditure not connected with the extraction of ore was made principally in an endeavor to trace an ore or vein connection from said property into adjoining mining claims, the Climax and Rebellion. All the work done was reasonably adapted to the developing of the property, and to the probable enhancement of its value."

The referee finds that the defendants received for ores extracted from the mine, rents, and royalties, the sum of $78,077.23, and that they expended in and about working, improving, and developing the property, and for extracting, freighting, and selling ores therefrom, including the sum paid for the certificate of purchase, and the services of Joseph and William Jennings, the sum of $100,899. In these expenditures the referee included $25,720 paid directly for the extraction of the ore, and for the hauling, freighting, sampling, and assaying necessary for the conversion of the ore into money. The defendants having taken possession of the mine with the consent of the plaintiff, and having worked it in good faith, they were entitled to compensation for all reasonable expenditures for the preservation, development, and permanent improvement of the property, to the extent that its value was enhanced thereby. Referee Sprague made no finding as to these expenditures. Referee Marshall found that the expenditures made in running the north tunnel did not add to the value of the property. He found that this tunnel cost $10 per foot, and that it was run 1,000 feet.

The testimony, as we think, warrants the conclusion that the tunnel and drifts connected therewith were 1,500 feet, and that $15,000 should have been deducted.

There are a number of expenditures in the Sprague report, aggregating $22,733.09, designated "all other supplies." How much of these supplies was used when prosecuting work that did not enhance the value of the property, we cannot know definitely. We must infer that some of it was. It also appears that a number of men were employed five weeks to hold possession of the north tunnel,—at one time, as many as 20. It is reasonable to infer that they were paid. If so, that expenditure was for the possession of the rejected tunnel, and should have been disallowed. If we allow the sum of $7,822 for supplies used in prosecuting work that did not enhance the value of the property, and for the men in defending the tunnel, the receipts equal the expenditures. Referee Marshall's mode was to deduct the payment for work that did not enhance the value of the property from the entire expenditures. While the court required strict and definite proof of the expenditures not directly contributing to the extraction of the ore, but enhancing the value of the property, the conclusion reached by either course is very unsatisfactory. The line between the expenditures that enhanced the value of the property and those that did not is exceedingly difficult to draw from the evidence. The probabilities are that the court excluded some expenditures that should have been allowed, and that the referee included too much. It is certain that the property was thought to be of little value when the defendants took charge of it, and that it sold for $50,000 at the time they ceased to operate it. We are unable to find from the evidence a balance to either party. With respect to interest, it appears that the receipts increased with the

expenditures, and conversely, and that interest should not be allowed to either side.

The case is remanded to the court below, with directions to that court to make its findings conform to the above conclusions, and to enter a decree on the findings, when so changed, giving the property described in the complaint to the plaintiff, and authorizing a suitable person, as commissioner, to transfer the title to the plaintiff by a sufficient deed, and requiring the respective parties to pay their own costs, so far as they have not already been apportioned or assessed. The costs of this appeal are assessed to the respective sides in equal proportions.

BARTCH and MINER, JJ., concur.