SPENCER CLAWSON, APPELLANT, *v.* WALLACE ET AL., RESPONDENTS.

RIGHT OF WAY—EASEMENT—TOWN SITE—TESTIMONY EQUALLY WITHIN KNOWLEDGE OF GRANTOR'S PREDECESSORS—EQUITY PRACTICE—APPEAL IN EQUITY—ADDITIONAL FINDINGS OF FACT —DOWER.

1. The statement of a deceased person cannot be received in evidence against the assignee of his heir in possession and in interest, under section 3877, Comp. Laws Utah 1888, as amended by Sess. Laws 1894, p. 26.

2. The plaintiff claimed title under an heir of Brigham Young. Respondents derived their interest in the same premises from S.

L. Sprague. *Held*, that Sprague was not a competent witness to testify to admissions made and conversations had with Young, deceased, which must have been equally within the knowledge of Young and the witness, under section 3877 Comp. Laws Utah 1888, as amended by Sess. Laws 1894, p. 26. *Held*, also, that this would not render the testimony of the wife of said Sprague incompetent in this respect, as she held and conveyed to the respondents no title in the land, but simply an inchoate right of dower; that her act of joining with her husband in a deed to respondents did not operate as to her by way of passing any estate, but that such act inures simply as a release to the grantee of the husband, of her possi-,ble future inchoate right of dower in the premises conveyed, and such act would not constitute her a grantor of the premises or vest in the grantee any greater or other interest than such as he derived from the conveyance from Sprague.

3. *Town Site Land—Probate Court.*

Under section 2817, Comp. Laws Utah 1888, known as the "Town Site Law," it was not necessary that Sprague, who held an easement over the land of Young, the title of which was in the United States government, should, in order to protect his interest and render the testimony of Mrs. Sprague competent, present their claim for an easement to the probate court for an adjudication, because such claim was simply an easement appurtenant to the adjoining land, and not an adverse claim, within the meaning of the statute. Sprague was not the rightful owner in possession, occupant, or entitled to the occupancy, of such way at the time, but the owner of an easement which recognized and conceded the fee, ownership, and right of possession of the land in the actual owner.

4. *Sale of Town Site Equity.*

An occupant in possession under the town site law may sell his equitable right to a lot before patent.

5. *An Appeal in Equity Cases—Constitutional Law.*

An appeal in equity cases brings up questions of both law and fact for review, and the appellate court may render such judgment and decree, and enter such findings, as, in their judgment, the evidence may justify.

6. *Additional Findings of Fact.*

It is not good practice, either in law or equity cases, nor is it

proper in either, after findings and judgment, for the court to file additional findings at the request of either party while the judgment is allowed to stand; and the appellate court may disregard such additional findings, or make findings of its own.

7. *Parol Executed Grant—Easement—Right of Way—User.*

When it appears by a preponderance of the testimony that there existed a parol executed grant to the respondent's predecessors in interest, of an easement or right of way over premises in dispute, and such right of way was accepted and used by the respondent's predecessors in interest since 1868, and was peaceable, uninterrupted, continuous, exclusive, open, adverse as of right, with knowledge of the appellant's grantor and predecessor in interest, and the respondents have succeeded to such rights, *held*, that the decree in favor of the respondents, decreeing such easement or right of way for all purposes of travel, should be affirmed.

(No. 868. Decided Feb. 8, 1898.)

Appeal from the Third district court, Salt Lake county. Ogden Hiles, *Judge.*

Action by Spencer Clawson against George Y. Wallace and others. Defendants had judgment, and plaintiff appeals. *Affirmed.*.

*Young & Moyle,* for appellant.

*Williams, VanCott & Sutherland,* for respondents.

MINER, J.:

This action was commenced in 1895, to quiet title to a strip of land 13x80 feet, on lot 8, block 75, plat A, Salt Lake City, described as commencing 225 feet east and 13 feet north of the southwest corner of said lot 8, thence north 13 feet, west 80 feet, south 13 feet, east 80 feet, to the place of beginning, and lies just north and west of the Salt Lake theater building in Salt Lake City. Respondents own land immediately north of the land referred to,

and north of the alley connecting the land referred to with such alley to State street, and claim that the land in question, with the alley on the east, has been for over 25 years an alley and public roadway for all purposes; that respondents had and have a right of way for all purposes over said land in question, and over said alley on the east of it, for 25 years; and that respondents and their predecessors in interest and grantors have used said road and alleyway for all purposes of travel; and that such use had been peaceable, continuous, exclusive, open, adverse as of right, and with the knowledge and acquiescence of the plaintiff and his grantors and predecessors in interest. The court found the issues against the plaintiff, and decreed to the respondents a right of way 13x185 feet, covering the alley the whole distance of respondents' land, for all purposes of travel, including the use thereof for vehicles, carriages, etc., and that there was no public highway across said premises. The appellant concedes the right of way from State street west, 13 feet wide by 105 feet long, to a point where a gate is claimed to have been erected allowing ingress and egress into the land of defendants, but deny defendants' right to any easement west of this point over the land in question, and claim that the testimony is insufficient to justify the findings or decree in this respect. The respondents called S. L. Sprague and wife, who testified to a conversation had with Brigham Young, with reference to the alleyway in question, wherein he gave them the right of way and use of the alleyway. The appellant made objection to the testimony of Mr. Sprague and his wife, on the ground "that it was immaterial, irrelevant, incompetent, hearsay, and on the ground that it is not pleaded as an estoppel, and that a record title cannot be so lost or affected, and that it is a statement of a deceased person against the assignee of his

heir by one in interest." The appellant, in this action claims under Emily Y. Clawson, who received the property as the heir of Brigham Young. Respondents derived their interest from S. L. Sprague. Appellant claims and sues the respondents, as the assignee of the heir of Brigham Young, deceased, with whom the alleged conversation was had.

Comp. Laws Utah 1888, § 3877, as amended by Sess. Laws 1894, p. 26, subd. 3, reads as follows: "The following persons cannot be witnesses: A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, and any person from, through or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit, or proceeding claims or opposes, sues or defends as guardian of any insane or incompetent person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian or assignee or grantee, directly or remotely, of such heir, legatee or devisee as to any statement by, or transaction with, such deceased, insane or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent or deceased person, unless such witness be called to testify thereto by such adverse party, so claiming or opposing, suing or defending in such action, suit or proceeding." We are of the opinion that, under this section, S. L. Sprague was an incompetent witness, in so far only as he detailed the conversation with Brigham Young, and testified concerning matters equally within Brigham Young's knowledge as affecting the title. *In re Atwood's Estate*, 14 Utah, 1. But this objection would not apply to Mrs. Sprague. It does not appear that Mrs. Sprague had any interest in the land conveyed to respond-

ents, except as the wife of S. L. Sprague. When she executed the deed, she released her inchoate right of dower, but conveyed no fee or title in the land. Her act as wife in joining in the deed does not operate as to her by way of passing an estate, but inures simply as a release to the grantee of the husband of her possible future contingent right of dower in the premises conveyed. Such act would not constitute her a grantor of the premises, or vest in the grantee any greater or other estate than such as he derived from the conveyance from Mr. Sprague. The grantee under such deed takes the title by virtue of the title and estate of the husband, and he therefore derives his title through, from, and under such grantee. In *Witthaus* v. *Shack*, 105 N. Y. 332, the court say: "The settled theory of the law as to the nature of an inchoate right of dower is that it is not an estate or interest in land at all, but is a contingent claim, arising not out of contract, but as an institution of law, constituting a mere chose in action, incapable of transfer by grant or conveyance, but susceptible only, during its inchoate state, of extinguishment. By force of the statute, this is affected by the act of the wife in joining with her husband in the execution of a deed of the land. Such deed, so far as the wife is concerned, operates as a release or satisfaction of the interest, and not as a conveyance, and removes an incumbrance, instead of transferring an interest or estate." We are of the opinion that Mrs. Sprague was a competent witness, and presume the court below decided the case upon the competent testimony before it. *Mining Co. v. Haws*, 7 Utah 515; *Salt Lake Foundry & Machine Co.* v. *Mammoth Min.-Co* , 6 Utah 351, affirmed 151 U. S. 447; *Stahn* v. *Hall*, 10 Utah 400.

But it is claimed by the appellant that at the time of the conversation between Brigham Young and Sprague, when

the easement and right of way is said to have been granted to Sprague, that the fee to the land in question was in the United States government; that Young had a mere possessory right therein; and that Sprague and the respondents lost any right which they otherwise might have had, by not setting up their claim, and having it determined by the probate court, under the provisions of the "Town-Site Law" (Comp. Laws Utah 1888, § 2817). For this reason it is claimed that the conversation between Sprague and his wife and Brigham Young was incompetent and immaterial. This section provides, in substance, that each and every person claiming to be the rightful owner of possession, occupant or occupants, or to be entitled to the occupancy or possession of such lands, or any part thereof, under the town-site act, in which they have or claim to have an interest, must specify such interest or estate, etc., and that persons not filing such claim are forever barred. That an occupant in possession may transfer and sell his equitable right to a lot under the town-site entry before patent is settled in *Hussey* v. *Smith,* 99 U. S. 20; *Stringfellow* v. *Cain,* 99 U. S. 610; *Hussey* v. *Smith,* 1 Utah 129; *McKennon* v. *Winn,* 22 L. R. A. 511.

The right of travel over another's land may be denominated an "easement" or "right of way." An easement is corporeal. A parol license, as well as a grant, is sufficient to create an easement. A contract for a right to pass over the land of another is an easement, extending only to a temporary disturbance of the owner's possession. "A grant of such easement is in the owner or occupant of the estate, over which the way is used." "So, any one who acquires the right by prescription or user to pass across the land of another cannot claim to have the fee in the land, or thereby become the owner or occupant of the land." Washb. Easem. pp. 3-27. If the respondents ever

obtained a right to pass over the land in question, it was merely a claim to an easement, which recognized and conceded the fee, ownership, and right of possession of the land in the actual owner. The provisions of section 2817, above cited, did not render it necessary to set up a claim to an incorporeal right, such as an easement, for the adjudication of the probate court. Such a claim is not an adverse claim, within the meaning of the statute. Neither the respondents nor Sprague, their predecessor in interest, were, nor did either of them claim to be, the rightful owner in possession, occupant, or entitled to the occupancy or possession, of such way. They did not come within the provisions of the act of congress, nor the statute referred to. They claim an easement,—an incorporeal right, incapable of possession or occupancy. This easement, if it was such, was appurtenant to the land adjoining it, and passed to Sprague, by the conveyance to him, under the decree of the probate court, of such adjoining land. *Ashby* v. *Hall*, 119 U. S. 526. We are of the opinion that the wife of S. L. Sprague was a competent witness, notwithstanding the objection.

It is also contended that there is a conflict in the findings of the court, and that special or evidentiary facts, filed three days after the findings were filed, justify a decree for the appellant. It must be remembered that this is a proceeding in equity, and that, under section 9 of article 8 of the constitution, in equity cases the appeal may be on questions of law and fact. "Therefore the appellate court, by necessary implication and intendment, has the same jurisdiction and power, in equity cases, to determine questions of fact as of law, and may go behind the findings and decree of the trial court, consider all the evidence, decide on which side the preponderance thereof is, ascertain whether or not the proof justifies the findings

and decree, and modify or set aside the findings and decree, and enter or direct such findings and decree to be entered as the evidence, in the judgment of the appellate tribunal, may justify." This has been the uniform holding of this court. *Whittaker* v. *Ferguson,* 16 Utah 240; *Mining Co.* v. *Jennings,* 14 Utah 221; *North Point Irr. Co.* v. *Canal Cos.,* 16 Utah 246.

It is not good practice, either in cases at law or in equity, nor is it proper in either class of cases, after findings and judgment, for the court to supplement such findings, and file additional findings at the request of either party, while the judgment is allowed to stand. *Kahn* v· *Smelting Co* , 2 Utah 371; *Fisher* v. *Emerson,* 15 Utah 517; *Los Angeles Co.* v. *Lankershim,* 100 Cal 525, 532; Hayne, New Trial & App. §§ 246, 247; *Hidden* v. *Jordan,* 28 Cal. 301; *Prince* v. *Lynch,* 38 Cal. 528; *Crim* v. *Kessing,* 89 Cal. 478.

It therefore becomes unimportant whether the evidentiary and additional findings are conflicting with the general findings or not, so far as our consideration of the case is concerned, because the appeal comes here upon questions of both law and fact, and it is made our duty to review both questions.

The court found that in the year 1868 one S. L. Sprague was the owner, in the possession of, and in the occupancy of, lot 8, block 75, plat A, Salt Lake City; that in the fall of that year he sold a certain portion of that lot to Brigham Young, including the right of way claimed by defendants; that, at the time of such conveyance, Brigham Young agreed with Sprague verbally that said Sprague should have a perpetual right of way over the land sold to Young, being 13 feet north and south, by 185 feet east and west, and extending the entire length of Sprague's premises on the south side thereof; that, in pursuance of such

agreement, Young and Sprague constructed a fence, with a gate, along and marking the north boundary line of said right of way; that defendants have succeeded to the ownership and possession of said Sprague. S. L. Sprague testified to the fact of the conversation with Brigham Young, wherein he granted them the use of the right of way in question, and further testified that ever since 1868 the alley had been used by them; that there was an open road there, with a fence on the north side of it; that they used it for wagons, horses, cattle, and sheep, and all other purposes; that he drove in from State street west, and also from Broadway on the east, to the gate, using the alley from both directions; that they sometimes went into the alley and through the gate, and sometimes went into the alley the length of the land, the entire 185 feet, going in one way, and going out the other, and entered their land on the north, through a gate constructed by Brigham Young for that purpose; and that such user had been continuous since 1868. Mrs. Sprague, his wife, testified. in substance, that in 1868 Brigham Young came down previous to the building of the picket fence running through the alley 185 feet, the length of the Sprague land; that Young asked Sprague and the family to go down, and see where the big family gate was to be; that they went down, and the gate was put a little west of the theater building; that Young said it was to be a perpetual way for Sprague and his children and his children's children, and turned to Hamilton Park, and said: "I want you to be a witness for the doctor and his family." She further testified that they went right through the alley; that there was a passage both ways; that they drove sometimes into the back end of their premises, at the end of the 185 feet, and sometimes from Main street; that she lived within 7 or 8 feet of the alley a great portion of

this time. H. B. Clawson testified, in substance, that "he had known the premises since 1863. He remembered the fence running back 185 feet, the length of the Sprague land; that one Morris had a business in the center of the block,—and that people having business there would drive in and turn around the corner of the Sprague land, at the end of the 185 feet; that there never was any objection to Sprague using the alley to get into the gate; that while he was in charge of the theater, and of his wife's land, he recognized this right on the part of Sprague." Hamilton G. Park testified to the conversation of Brigham Young and Sprague, and said the conversation was "with reference to the exchange of some land; that it would be necessary to get a little more room for the erection of an addition to the theater, and during the conversation Sprague asked relative to the right of way to get around to his barn and woodyard; that Young replied, 'Certainly, when this building is erected [referring to the addition to the theater on the north], you shall have the right to drive in there to your barn and woodyard, or anything else that is necessary to your comfort here on these premises.'" Heber J. Grant testified, in substance, that the gates were even with the theater on the northeast side; that afterwards they were moved back into the end of the alley to the corner of Sprague's land. He paid no particular attention to where they were located, but would say that it was on the west corner of Sprague's lot.

Many witnesses were called by both parties. Most of the testimony offered by the appellant tended to some extent to qualify or contradict the testimony of the respondents, except as to the testimony of Mrs. Sprague and Mr. Park, with respect to the conversation with Brigham Young. Their testimony in this respect stands uncontradicted. Nearly all the witnesses agree that the

gates were placed in the alley back of the theater at its intersection with State street, and afterwards gates were erected in the lane, near the middle or west end of Sprague's land, over 105 to 185 feet back of State street, but these gates were left open most of. the time, or became useless; and that Sprague and his family enjoyed the use of the alley to his back gate from 1868, until he sold to respondents, in 1888; and that this back gate was placed where Brigham Young placed it, somewhere west of the west line of the theater building, over 105 feet from State street, but where, it is not definitely stated. The fact that Sprague used the alley the whole length of his lot without objection is clearly shown, as is the fact that residents along the alley and others used the lane from 1868 up to a very short time before the trial, but that during this latter period the appellant made objection to such use, and erected gates to prevent such use to all except to the Spragues, who enjoyed this use as long as they resided on the premises. It appears from the evidence that there was a parol executory grant, for a valuable consideration, passed from Brigham Young to S. L. Sprague, for an easement or right of way over the alley in question, a distance of 13x185 feet west of State street, along the south line, marked by a fence erected by the parties, and agreed upon as the line bounding the land. This right of way was accepted and used by Sprague and his successors in interest since 1868. The enjoyment of the right was peaceable, uninterrupted, continuous, exclusive, open, adverse, as of right, with the knowledge of plaintiff and his grantors and predecessors in interest, including Brigham Young; and the defendants have succeeded to the rights of Sprague therein.

The views herein expressed are not in conflict with the holdings of this court, in *Drake* v. *Reggel*, 10 Utah 376;

*Rogers* v. *Thompson*, 9 Utah 46; *Amy* v. *Amy*, 12 Utah 278; *Harkness* v. *Woodmansee*, 7 Utah 227.

Upon the whole testimony we are satisfied that the findings and decree of the trial court are sustained by a preponderance of the testimony, and that the judgment should be affirmed. The judgment of the court below is affirmed.

ZANE, C. J., and BARTCH, J., concur.