DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

OCTOBER TERM, 1901.

NELSON SANDBERG, Respondent, v. VICTOR GOLD
& SILVER MINING COMPANY, a Corporation, Appellant, et al.

No. 1296. (66 Pac. 360.)

**1. Mechanics' Liens: Foreclosure: Notice: Publication.**

Revised Statutes, section 1391 (Mechanic's Lien Law 1894, chap.
41, sec. 8), provides that the plaintiff shall publish a notice of
his claim of lien for a certain time in a newspaper, notifying all
persons holding or claiming liens on the premises to appear and
exhibit them; whereupon the court may determine claimant's
rights, and all liens not so presented shall be deemed waived.
A summons in an action to foreclose a mechanic's lien was reg-
ularly issued and served, but no notice of lien was published.
It was not alleged, in a motion to dismiss the complaint, nor did
the record show, that any person other than the plaintiff claimed
or had filed a lien. The county recorder testified that no other
claim of lien had been filed. *Held*, that the failure to give the
statutory notice was not fatal to plaintiff's cause of action,
since defendant was not shown to have been prejudiced thereby.

**2. Contract of Employment: Action for Services: Evidence.**

Where the president and manager of defendant corporation had au-
thority to employ and discharge workmen, and owned a majority
of the shares of stock, evidence of plaintiff's conversation with
him, and of an agreement between them as to the compensation
to be allowed plaintiff for his services as superintendent of de-
fendant's mine, was properly admitted in an action by the

24 Utah—1 (1)

plaintiff to recover for such services, and foreclose a mechanic's lien therefor.

### 3. Same: Time not Essence of Contract.

In an action to foreclose a mechanic's lien and to recover for services rendered as superintendent of defendant's mine, evidence of conversations with defendant corporation's president, and of an agreement with him as to the rate of compensation, is not incompetent because had after the contract was alleged in plaintiff's complaint to have been made; the time of making the contract not being of the essence thereof.

### 4. Same: Variance.

Plaintiff's complaint alleged, and the notice of mechanic's lien stated, that the action was brought under an express agreement to recover for services rendered and to foreclose a lien therefor. He testified that the agreement in regard to wages was that they should "be made all right." Held, that his testimony did not show an implied contract, and hence there was no variance.

### 5. Same: Pleading: Proof.

Where a corporation employed the plaintiff under an agreement to pay what his services were worth, and the rate of wages was afterwards fixed by the parties, it was proper to allege in declaring on the contract that the company agreed to pay the wages fixed in the adjustment, and under such allegation proof of the original contract and the subsequent adjustment is admissible.

### 6. Same: Harmless Variance.

Defendant company employed plaintiff, agreeing to pay him what his services were reasonably worth. Defendant's superintendent afterwards adjusted the rate of wages with him. In an action on the contract to recover for such services, the complaint and notice of lien stated a greater rate, and defendant alleged a less rate was to be paid, and under certain conditions. Held, that the variance between plaintiff's allegations and the contract was harmless, where the judgment in his favor was for a less sum than that established by the adjustment, and no evidence was introduced supporting the allegations of defendant's answer.

### 7. Same: Harmless Error.

The fact that plaintiff was allowed to testify to the reasonable value of his services was not reversible error, where he testified that they were worth the price fixed by the adjustment, and where the judgment was for a less sum than the amount of the adjustment.

8. **Same: Findings: Appeal.**
   Where findings are inconsistent with each other, and against the pleadings and the preponderance of the evidence they will be set aside on appeal, and new findings rendered.

9. **Same: Appeal.**
   Where a recovery was had for an amount less than the sum to which plaintiff was in fact entitled under a contract of employment, the judgment will not be disturbed on an appeal by defendant, where plaintiff has not appealed.

10. **Mechanic's Lien: Good Faith: Appeal.**
    Where the want of good faith in making a claim of a mechanic's lien was first raised on appeal, it will not be considered.

11. **Same: Foreclosure: Interest.**
    In an action to foreclose a mechanic's lien and to recover for services rendered under a contract of employment, it was proper to allow interest on the sum awarded.

(Decided October 24, 1901.)

Appeal from the Fifth District Court, Juab County.—*Hon. W. M. McCarty,* Judge.

Action to foreclose a mechanic's lien and to recover for services rendered by plaintiff for the defendants. From a judgment in favor of the plaintiff the Victor Gold & Silver Mining Company appealed.

AFFIRMED.

*Messrs. Pierce, Critchlow & Barrette* for appellant.

(1) The court had no jurisdiction of the cause as a suit in equity.

This lien was filed in August, 1894. The action is a statutory one and the right given is a creature of statute. The proceedings, therefore, in the foreclosure of the lien are those which are set forth in the statute which creates the right, it being a fundamental rule that where the right is statutory the remedy which is given with it must be strictly followed. The remedy given for the foreclosure of this lien is set forth in section 8, of chapter 41, Laws of 1894. This section provides

that the plaintiff shall cause a notice to be published at least once a week for three consecutive weeks in one newspaper of general circulation, published in the district, notifying all persons, etc.   This was not done, and our contention is that the court did not obtain jurisdiction of the cause.   This objection was taken at the trial at the very outset, and is still insisted upon.   As special proceeding or as a suit in equity the action must fail.   If it were to be prosecuted as an action for work and labor, we had a right to have it proceed as an action at law, with the privilege of a jury trial.

(2) The court erred in admitting evidence as to conversations with Groesbeck, and agreement with him, made after the services had all been rendered, that the compensation should be at any given rate.

As heretofore stated, the plaintiff and the defendant, according to plaintiff's own testimony, had no agreement as to the rate of his compensation for the period from December 1, 1890, to the time the mine shut down, May 1, 1893, until more than a year after that date, August 16, 1894.

And according to the undisputed testimony he had no agreement at any time as to the rate of his compensation from May 1, 1893, to August 14, 1894, until after the services had been rendered, to-wit: on August 16, 1894.

The question here raised, therefore, is as to the competency of the testimony of Sandberg that Groesbeck on August 16, 1894, agreed with him that the Victor was indebted to him at the rate of $6 per day for a certain period, and at the rate of $60 per month for another period of time.

Another question raised by the testimony is as to the authority of Groesbeck to make any such agreement on behalf of the Victor company.

It will be observed that Sandberg attempted to testify as to a conversation which he had at Judge Henderson's office on August 16, 1894, with William Groesbeck respecting the agreement as to the amount of money which he (Sandberg)

earned from the company and the amount that was due him. It was incompetent for the reason that it called for the declaration of Groesbeck respecting a past transaction under circumstances when he (Groesbeck) had no power or authority to bind the corporation. It was immaterial for the reason that it did not tend to sustain the issue tendered by the complaint for the reason that the complaint alleged a contract made in December, 1890. Under the circumstances the declaration of Groesbeck to Sandberg that the rate of $6 per day was fair and just was as to the company the merest hearsay and was incompetent. We cite in support of this rule V. & M. Railroad Co. v. O'Brien, 119 U. S. 99; Mechem on Agency, sec. 714; Roberts v. Burks, 12 Am. Dec. 325; 1 Rice on Evidence, 445, et seq.; Winchester & P. Mfg. Co. v. Creary, 116 U. S. 161.

(3) The court erred in admitting in evidence the notice of lien. After Sandberg had testified that he had no contract with defendant as to his rate of compensation, his counsel offered in evidence the notice of lien upon which the action is based. To this objection was made that it was immaterial for reasons stated at length.

The plaintiff stated one case in his pleadings and by testimony proved another. Our contention is that there was a variance between the facts as proven and admitted, and the contract and facts set forth in the notice.

(4) The court erred in admitting evidence as to the reasonable value of the services rendered, or alleged to have been rendered.

We were not cited into court to meet the issue as to the reasonable value of plaintiff's services. No notice was given of such an issue.

To this question counsel for defendant objected upon the ground that the same was immaterial and irrelevant, and because not in accordance with the written claim of lien filed, the claim being upon an express contract for the payment of a definite sum, to be paid monthly; and for the reason that the

testimony is not supported by the complaint in the action; and. for the further reason that the reasonable value of such services is not stated in the pleadings, and the defendant is not prepared to meet such issue.

But the court erred still further in its finding of fact made on the foregoing testimony, for .it accords neither with the complaint, nor with the testimony. The findings are consistent neither with the complaint, with the proof, nor with themselves. They should respond to the issues. Hayne New Trial, sec. 242. And they should not be contradictory, ibid.

· If there was an express contract proven of $200 as set forth in the notice of lien, then the findings of fact should have been to this effect. If there was no express contract, but the reasonable value of the services was $3 per day and· board, then this was a variance from the claim of lien named in the complaint upon the one hand, and a variance from the finding of fact upon the other hand. If as a matter of fact there was no agreement (and this was the testimony of both plaintiff and defendant) as to the rate of compensation after the mine shut down, then the court certainly was not justified in finding as it did that the original contract was modified to $2 per day. Frazer v. Barlow, 63 Cal. 71; Cox v. McLaughlin, 63 Cal. 197; Palmer v. Lavigne, 104 Cal. 30; Malone v. Gravel Co., 76 Cal. 579.

(5) The court erred in rendering judgment upon the findings as made for the reason that it was apparent that the claim of lien was not made in good faith.

The claim was for $6,817. The recovery was $1,643.90. The court found that the plaintiff when he filed his claim of lien made a claim which was excessive to the amount of $5,173.10.

It is found by the court that whereas he claims in his notice of lien that he had received from defendant only $673, he had as a matter of fact received $1,014.10.

It is shown on the face of the findings and decree that

this man, who was a common miner, who acted as foreman or superintendent under a manager for a period of two years and five months with six men under him, and who lived on the ground fifteen months longer while the mine was shut down, who received in the meanwhile $1,014, still has the effrontery to cloud the title of his employer with a claim that there is still due him $6,817, and that this claim is excessive by more than $5,000.

Can any stronger proof of bad faith be adduced?

Section 14 of the very act under which he filed his notice of lien (Laws 1894, p. 51), provides that a person who shall knowingly cause to be filed for record a claim of lien against any property whatever, which shall contain a greater demand than the sum that is due him, with the intent to cloud the title, or to exact from the owner or person liable, by means of such excessive claim of lien more than is due him, or to procure any advantage or benefit whatever, shall be deemed guilty of a misdemeanor.

Will any one say that under the circumstances Sandberg did not know he was not entitled to this immense sum of money? Or that he did not file the claim to procure an advantage or benefit therefrom?

A thing which is prohibited as a crime can not be made the basis of a recovery in a court of equity. Nor will courts sit to enforce on the civil side claims which sitting as criminal courts, they denounce as public offenses.

We think that for this reason alone, independent of every other error alleged, the decree should be set aside.

If Sandberg has any claim at all it is a claim at law to be enforced as one on the law side of the court, either in this action, when the complaint shall be amended, or in a new one.

(5) The court erred in awarding interest on the sum which it found due, from the date of the filing of suit to date of decree.

Under the testimony this was an unliquidated demand.

Plaintiff's evidence shows it to be such.   There was never any demand made for the sum due, but a fictitious and fraudulent claim made for a sum which defendant was never expected to pay.   The filing of the notice and the bringing of suit can not stand for a demand on the part of plaintiff.   It was a spurious, fraudulent demand for other moneys due 'on an entirely different cause of action.

Interest, therefore, did not begin to run until the amount was properly demanded and liquidated on the trial of this action.   Reed v. Rensselaer Gears Factory, 3 Cow. 393; Swinnerton v. A. L. & D. Co., 112 Cal. 379; Cox v. McLaughlin, 76 Cal. 60; Brady v. Wilcoxson, 44 Cal. 239; Murray v. Ware, 4 Am. Dec. 637; McConnico v. Curzen, 1 Am. Dec. 544; Palmer v. Stockwell, 9 Gray 237; Brewer v. Tyringham, 12 Pick. 547; Doyle's Admrs. v. St. James, 7 Wend. 178; Goff v. The Inhabitants, etc., 2 Cush. 475; Marsh v. Fraser, 37 Wis. 152; Smith v. Velir, 60 N. Y. 106.

*Messrs. Booth, Lee & Ritchie* and *Messrs. Dey & Street* for respondent.

(1) The appellant contends that the failure to publish the notice authorized by section 8 of the Act of 1894, Session Laws of 1894, page 48, is jurisdictional; that is to say, that the court did not acquire jurisdiction of the cause, as a suit in equity, simply because the plaintiff failed to have published the notice authorized by the Laws of 1894. ·

The contention of the appellant is not well founded.   It is a well known rule of statutory construction that there is a presumption against an intention on the part of the Legislature to oust courts of their jurisdiction, and any construction leading to such a result is to be avoided if possible.   23 Am. and Eng. Ency. of Law (1 Ed.), 353.

In Neenan against Smith, 50· Mo. 525, it was said that "in construing a statute, reference must be had to its object, and it will not be presumed that the Legislature intended to

authorize a proceeding unreasonable of itself, unless the intention is indicated in express terms."

The intention and object of that portion of section 8, chapter 41, of the Laws of 1894, which provides for publication of notice, was to notify all persons holding or claiming liens under the provisions of this act, on said premises, to be and appear on a day specified, etc.; and a failure to so publish would not bar any other liens. The intention of the statute is to have all liens against the premises determined in one suit; nothing more and nothing less. It is not a provision which is jurisdictional as to the owner of the property. He is brought into court by the summons.

The act does not provide for any different mode of commencing an action to foreclose a mechanic's lien than to commence any other action. It simply provides that in addition to commencing an action in the ordinary way, that is, by filing a complaint and issuing a summons, a notice shall be published to notify other lien holders, so that they may present their claims and have them disposed of in one action.

If there are no other lien holders, as was proven in this case, a publication to notify persons that did not exist, would be an absurdity, a mere waste of money, a meaningless and an unreasonable performance. It would be an injustice to the plaintiff to require him to expend money for publishing a notice, and it would be an injustice to the defendant to be taxed with the costs of publishing such a notice. No good could come from it; nothing but injury would result.

The statute of Utah in force at the time this action was commenced, provided that an action is commenced by filing a complaint, providing a summons is issued within the time required by law; and it has been held by the Supreme Court of Utah in the case of Needham v. Salt Lake City, 7 Utah 319, that if the parties appear voluntarily and plead, the court acquries jurisdiction without the issuance of summons. If there had been other lien holders, and no notice had been pub-

lished, and the other lien holders had appeared voluntarily, the court would have acquired jurisdiction to decide their rights also.

This action was commenced in the proper manner, and having been commenced in the proper manner, the court acquired jurisdiction. Elliot v. Ivers, 6 Nev. 290; Whitney v. Higgins, 10 Cal. 547.

(2) The second contention of the appellant is that the court erred in admitting evidence as to conversations with Groesbeck, and agreement with him, made after the services had all been rendered, that the compensation should be at any given rate.

The objection that was actually made at the trial to this testimony was that the testimony was incompetent, immaterial and irrelevant.

If, therefore, the testimony was either competent, material or relevant, the objection was properly overruled by the trial court.

It was not alone the declarations and admissions of Groesbeck that were sought to be established by the evidence objected to, but the fact of settlement, and the manner in which it was arrived at, and showing why and how Sandberg's lien was prepared and filed for the amount in which it was prepared and filed. The whole transaction took place while Groesbeck still had authority, and it was certainly a part of the *res gestae.*

A few cases directly in point are of far more value than a multitude of cases that are applicable to a different state of facts. Dobbins v. Pyrolusit Manganese Co., 75 Ga. 452; 7 Thompson on Corporations, secs. 8546-8; Senour Man. Co. v. Clarke, 96 Wis. 469; 7 Thompson on Corp., secs. 8556-7.

(3) In answer to points 3 and 4 in appellants' brief we call the court's attention to the fact that an express contract was stated in the lien, and an express contract was alleged in the complaint; and that an express contract, although different

as to its terms, was alleged by the defendant in its answer. In other words, plaintiff claimed upon an express contract, and defendant claimed there was an express contract, and the court, in its findings, found an express contract.

It is true that the amount claimed by the plaintiff is different than that allowed by the court, but a difference as to amount is not a fatal variance.

For the purpose of the argument we will first argue the agreement made in 1890, without reference to the subsequent agreement in August, 1894.

The testimony of the plaintiff proved that an express contract was entered into by and between himself and the defendant corporation, acting by and through William Groesbeck, who, we have shown, was the general manager and president of the company, acting with authority from and for the company and on its behalf, whereby the plaintiff should act as foreman or superintendent of the defendant's mines (there being no difference between the terms used as to his duties), and the plaintiff having shown further that it was agreed that his compensation should be made all right; that is, that he should have a reasonable compensation, or in other words, that he should be paid the value of his services.

The promise was a direct and positive promise of the company, made through its proper officer, and the amount only was to be established by proof and not implied, as the amount could not be implied, therefore the contract was an express contract, and not an implied contract.

If there had been nothing said about wages, or about the employment, and Sandberg had gone to work for the company and worked for it as he did and as shown in this case, then in that case the agreement to pay him the reasonable value of his services would be implied; but even in that case, the amount would not be implied, that would be established by direct proof.

The contention of the appellant that it had no knowledge

of what it was to meet at the trial is entirely, it seems to us, without merit, because the knowledge of the president under the circumstances we have shown, would give the appellant corporation full knowledge of all the facts concerning the same. We cite the following authorities on the question of the contract being an express one.

The maxim, *"expressum facit cessare tacitum,"* applies. That which is expressed makes that which is implied to cease. In other words, the express mention of one thing puts an end to that which is implied. 12 A. & E. Enc'y (2d Ed.), 571.

"When there is an express promise, the law does not raise an implied one in reference to the same matter, for *expressum facit cessare tacitum."* Kansas City Planing Mill Co. v. Bundage, 25 Mo. Appeals 272.

Upon the question of variance and upon the construction of mechanic's lien laws, we cite the following authorities: "Statutes, giving liens to laborers and mechanics for their work and labor, are to be liberally construed."

"An overseer and foreman of a body of miners, who performed manual labor on the mine, is entitled for his services to a lien on the mine, under the law of Utah giving a lien for labor thereon." Flagstaff S. M. Co. of Utah v. Geo. Cullins, 104 U. S. 176; Cullins v. Flagstaff S. M. Co., 2 Utah 219; Springer Land Ass'n. v. Ford, 168 U. S. 523; Judd v. Duncan, 9 Mo. App. 417; Culmer v. Clift, 14 Utah 289-290.

The appellant cites several cases of the Supreme Court of the State of Illinois. We call the court's attention to the fact that the courts of Illinois, differing from nearly all of the other States in the Union, have always placed a strict construction on the mechanic's lien law. This is not in accord with the construction that has been placed upon such laws by the United States Supreme Court, nor by the Supreme Court of Utah, nor by many of the other States of the Union. 15 A. & E. Enc'y of Law, 1st Ed. 179; Thomas v. Huesman, 10 Ohio St. 152-6; Petrovitsky v. Brigham, 14 Utah 476.

(4)   The fifth point made by the appellant is that the court erred in rendering judgment upon the findings as made for the reason that it was apparent that the claim of lien was not made in good faith.

We call the court's attention to the fact that the claim of the lien for that amount was made out in August, 1894, after Sandberg had had a settlement with William Groesbeck, as president and general manager of the appellant corporation; that the claim of the lien was made out by the attorney, who was at the same time the attorney for the appellant corporation, after all the facts had been fully submitted to the said attorney.   The court's attention is called to the further fact that Sandberg testified that he believed his services were of the reasonable value of $200.00 per month; that he had been mining for many years; that he had had charge of other mines; that he had been superintendent of other mines, and that under his employment with the appellant corporation he was to act as superintendent.   That Sandberg in addition performed manual labor all the time he was there.

There is no doubt but what Sandberg believed himself honestly entitled to that amount.   It is not uncommon for mining companies to pay their foreman or superintendent much larger sums than that for their services.   There is no evidence here but that Sandberg performed the services in this case in an able and efficient manner, and while the trial court has not allowed him that sum, yet it refused to find that his claim was not made in good faith.

This same point was argued fully to the trial court on the motion for a new trial, and the judge, who saw the witnesses and heard the evidence, ought to have formed a very good idea of the honesty and sincerity of the witnesses.

(5)   In answer to the sixth point of appellant's brief we will say that this is something new.   We hear of it for the first time in the Supreme Court.   There was no such contention made at the time the judgment was rendered, nor on the

motion for a new trial, nor is any such error assigned in the bill of exceptions.

If there had been any such contention made in the motion for new trial, or in the bill of exceptions as served upon the attorneys for the respondent, the attorneys for the respondent would have insisted upon the inserting in the bill of exceptions the evidence which was taken at the trial which showed that Mr. Sandberg had not been guilty of any laches in the prosecution of his claim, but on the contrary, had insisted month after month, year after year, that the cause should be tried and determined. Interest could not be refused except where the plaintiff has been guilty of delay in the prosecution of his claim, but the evidence at the trial showed conclusively that the plaintiff had not been guilty of any delay in the prosecution of his claim.

We think it is decidedly unfair for the appellant to now insist upon its contention as to interest after having failed to assign any such error, or argue the same on its motion for new trial, or assign any such error in its bill of exceptions prepared for appeal in this case.

The court allowed interest, and it is largely a matter of discretion of the trial court as to whether interest should be allowed or not. Phillips on Mechanic's Liens, 2 Ed., Sec. 214; Williamette Falls T. & M. Co. v. Riley, 1st Ore. 183; Forbes v. Williamette E. Co., 23 Pac. 670; Merritt v. Pearson, 76 Ind. 44; Johnson v. Boudry, 116 Mass. 196; Young v. Godbe, 1 Utah 55; 82 U. S. 562; Wasatch Co. v. Crescent Co., 7 Utah 16, 115 U. S. 323.

BASKIN, J.—It is, in substance, alleged in the complaint that on or about the first day of December, A. D. 1890, the said Victor Gold & Silver Mining Company, being then the owner, in the possession and entitled to the possession, of all of the said real estate and mining claims (described in the complaint), entered into a contract with this plaintiff, by which

the said plaintiff was to become and be superintendent thereof, and was to take possession of all of the said property, and to run, work, and operate the same as manager and superintendent thereof, and to have charge and do development work thereon, and that he was to receive $200 per month; that on or about the first day of September, A. D. 1893, the said agreement was modified, so that this plaintiff was to receive thereafter $60 per month, but in all other things said contract was to continue and be in force; that on or about the first day of December, 1891, in pursuance of said agreement, plaintiff entered upon said employment, and continued therein from said date up to the present time (which was October 22, 1894, the date of filing the complaint); that the amount due plaintiff for his said services, up to and including August 16, 1894, was $7,490, and that he has only been paid $673; that there is still due him $6,817; that on the sixteenth day of August, 1894, he claimed a lien on the said mining company's property, and on that day filed in the office of the recorder in Juab county, in which said property is situated, a statement in writing containing a notice that he claimed and intended to hold a lien on said property for his said demand; that said statement was recorded in said office on the seventeenth day of August, 1894, and on the same day a copy of the same was served on the Victor Gold & Silver Mining Company. The prayer of the complaint was for the foreclosure of the lien and for general relief. The answer of the appellant, the Victor Gold & Silver Mining Company, denies the execution and modification of the contract alleged in the complaint, or that plaintiff entered into the possession of or worked upon the said property of this defendant on the first day of December, 1890, or at any other time prior to December 15, 1890, or that since the date aforesaid he has been or remained in the possession of said property, or has taken charge thereof or has done any work or labor thereon to any extent, or in any manner after the thirty-first day of March, 1893; that the

work and labor performed by said plaintiff for this defendant began on or about the fifteenth day of December, 1890, and continued, with interruptions, from time to time, up to and including the thirty-first day of March, 1893, and no longer; that said labor was performed under an express contract and agreement between said plaintiff and this defendant to this effect, namely, that the said plaintiff should perform work and labor as manager or foreman for this defendant at and upon the mining property aforesaid, and that the plaintiff should be paid therefor at the rate of $60 per month, and should receive in addition his board and lodging, to be supplied by this defendant, and, except for small sums for clothing and other small expenses, the plaintiff was not to be paid anything for his services, until by his labor, and the labor of such other miners as the company might employ, the mining property should be rendered productive, and that then, and not until then, was he to be paid only out of the net proceeds of the ore extracted from the mining property. The answer further alleges that at no period during the time the plaintiff continued in the service of the company were the proceeds of the mine sufficient to pay the expenses of working the same, and no net proceeds whatever were received by said company; that the plaintiff has been paid by the company for his services $1,990.05, and in addition thereto was furnished with board.

At the trial, immediately before the introduction of the evidence, the defendants made a motion to dismiss the case on the ground that the trial court had no jurisdiction, for the reason that no notice had been published in pursuance of the provision of section 8, chapter 41, Mechanic's Lien Law 1894 (section 1391, Rev. Stat.). This motion was overruled. The plaintiff thereupon went upon the witness stand, and testified, in substance, that in the latter part of November, 1890, he applied to William Groesbeck, who was the president and general superintendent of the defendant mining company, for work as a common miner in the mines of the company; that in a few

days thereafter he and Groesbeck went to the mining property
of the company, and that he began to work; that in about a
week thereafter William Groesbeck came back to the mine,
and said to the plaintiff, "I want you to take charge of the
mine, and I will make the wages all right with you;" to this
plaintiff assented, and there was nothing said further about
the wages at that time; that the plaintiff, as requested, took
charge of the mine, and continued in charge thereof until the
men employed under him all quit, in June, 1893, on account
of not being paid; that during that period he worked contin-
uously; had charge of eight men at one time, directed their
operations, bought the provisions, signed the checks, and had
complete charge of the workings; that William Groesbeck was
the president and general manager, and directed the plaintiff,
and gave him orders, which plaintiff gave to the men working
under him; that plaintiff was never discharged by the mining
company, and after the men quit continued to work in the
mine; that he worked faithfully all the time from September,
1893, to August, 1894, fourteen or fifteen hours per day,
and from December, 1890, up to September, 1893, worked
hard all the time, putting in each month full month's labor,
and in addition to his other labor did the surveying and black-
smithing at the mine; that on the day the lien was taken out,
August 18, 1894, plaintiff went to Groesbeck's house, in Salt
Lake City, and after they had talked about taking out a lien,
and about plaintiff's wages, Groesbeck agreed to give plaintiff
$6 per day from December, 1890, up to September, 1893, and
because the plaintiff had no men under him from September
1, 1893, to August 18, 1894, it was agreed that the plaintiff for
that period should be paid only $60 per month; that they then
went to Judge Henderson's office, and after some further talk
about the matter, Judge Henderson, an attorney at law, sat
down, and, in the presence of Groesbeck and plaintiff, dictated
the notice of the lien claimed by plaintiff, and after both
     24 Utah—2

Groesbeck and the plaintiff had read the same, and Groesbeck had said that it was all right, the notice was sent to the county recorder, and by him recorded. The notice of lien, after stating the amount of plaintiff's claim, set out the contract between the plaintiff and the defendant mining company, as follows: "And I further give notice that I was employed to do the said work and labor aforesaid by the said Victor Gold and Silver Mining Company, which is the owner of said real estate; that the terms of said contract was that I should enter into possession of said property, and remain in possession of it, having the sole charge thereof, and be its manager and superintendent, and to receive $200 per month until September 1, 1893, and from that time $60 per month; and that the amount above stated is the sum actually due, over and above all legal or equitable set-offs and credits." It is stated in the bill of exceptions that plaintiff's lien was prepared and this action brought by Messrs. Brown & Henderson, as plaintiff's attorneys, who were at the same time the attorneys for defendant mining company in all litigated matters except this action. It also appears from the bill of exceptions that it was admitted at the trial by defendant's attorneys that William Groesbeck from December 1, 1890, to September 1, 1894, was the president and general manager of the company's mining property, and had authority to employ and discharge the workmen, and owned 57,388 shares out of 100,000 shares of the stock of the company. William Groesbeck testified that he agreed to pay the plaintiff $3 per day, and he to board himself. The foregoing is, in substance, all of the testimony relating to the contract. The trial court, in place of awarding the amount fixed by the general superintendent and the plaintiff on the sixteenth day of August, 1894, awarded plaintiff the sum of $1,644, with interest at the rate of eight per cent per annum from August 14, 1894, and decreed that the plaintiff held a lien on the said mining company's property to secure the same; that said property be sold, and the proceeds thereof applied in

satisfaction of said lien and the costs of the suit. None of the defendants except the mining company appealed.

The first objection urged by the appellant is that the trial court erred in overruling the motion to dismiss the case. It was not alleged in the motion, nor does it appear from the record that any other person than the plaintiff claimed or had filed a lien on the mining property in question. It is stated in the bill of exceptions that the defendant at no time attempted to show that any other notice or claim of lien had ever been filed against said property, and that the recorder of Juab county testified that no other notice of claim on said property had ever been filed. Section 8, chapter 41, Mechanic's Lien Law 1894 (section 1391, Rev. Stat.), provides that:

"At the time of filing the complaint and issuing the summons, the plaintiff shall cause a notice to be published at least once a week for three consecutive weeks in one newspaper of general circulation, published in the county, notifying all persons holding or claiming liens on said premises, under the provisions of this chapter, to be and appear before said court on a day specified therein, and during a regular term thereof, and to exhibit then and there the proof of said liens. On the day appointed, all persons claiming liens against the premises shall appear before said court and exhibit the same, whereupon the court shall proceed to hear and determine the claims in a summary way, or may refer the same to a referee to ascertain and report thereon, and shall enter judgment according to the right of the parties, and all liens not so exhibited shall be deemed to be waived against the property."

A summons was regularly issued and served on the defendants but the record fails to disclose the publication of the notice mentioned, and it is conceded that none was published. If there were other lien claimants, the defendant mining company should have in its answer pleaded that fact; but having failed to do so, or otherwise show or claim that there were any

others, we must presume that there were none. The record fails affirmatively to show that the company has been prejudiced by a failure to give the statutory notice. If it had been shown that there were other lien claimants than the plaintiff, the trial court, no doubt, would, upon request, have required the statutory notice to be published. Section 15 of the Nevada lien law (Comp. Laws Nev., p. 805) contains the same provision as section 8, chapter 41, Laws 1894 (section 1391, Rev. Stat. Utah), before quoted. In the case of Lonkey v. Wells, 16 Nev. 271, in which an identical question with the one under consideration was raised, in the opinion delivered by HAWLEY, J., it is said:

"This brings us to a consideration of the last question presented by this appeal: Did the court err in hearing and deciding this case without proof that notice had been given to other lien claimants, as provided in section 15? If there had been any showing that there were other lien claimants, we think it would have been the duty of the court to have compelled the plaintiffs to give the notice required by law before proceeding to hear the case. The law contemplates that all the lien claimants shall be brought in, and their rights, as well as those of the plaintiff and defendant, shall be heard and determined in one action. Elliott v. Ivers, 6 Nev. 290. But in the present case there is no showing that there were any other liens, and we must presume there were none. If so, the defendant could not have been prejudiced, and is not entitled to a new trial."

The case of Elliott v. Ivers, 6 Nev. 287, is also in point. We have been unable to find any other decisions directly in point, but the cases of Sexton v. Weaver, 141 Mass. 278, 6 N. E. 367, and Branham v. Nye, 9 Colo. App. 19, 47 Pac. 402, have an indirect bearing. By the service of the summons on the defendants, and the appearance by answer of the defendant mining company, the court acquired jurisdiction over the subject-matter of the litigation between the plaintiff and de-

fendants and of the parties to the action, and therefore committed no error in overruling the defendant mining company's motion to dismiss the action.

The second objection is as follows: "The court erred in admitting evidence as to conversations with Groesbeck, and agreement with him, made after the services had all been rendered, that the compensation should be at a given rate." The specific ground of this objection is stated in the brief of appellant's counsel, as follows: "It was incompetent for the reason that it called for the declaration of Groesbeck respecting a past transaction, under circumstances when he (Groesbeck) had no power or authority to bind the corporation. It was immaterial, for the reason that it did not tend to sustain the issue tendered by the complaint, for the reason that the complaint alleged a contract made in December, 1890." In respect to the first objection, it appears from the record that William Groesbeck, at the time of the transaction in question, was the president and general manager of said company. In that capacity he employed the plaintiff, and directed him while employed in the service of the company. In view of the facts disclosed, the general superintendent of the company was the proper party to whom the plaintiff should apply for the adjustment and payment of his wages. This he did, and the plaintiff's statement that the adjustment, claimed by and testified to by him, was made, is uncontradicted in the record. We are of the opinion that the evidence in question was not objectionable on the ground of the want of authority of William Groesbeck.

In regard to the other objections, the time at which the alleged contract was made is not of the essence of the contract. This being so, the plaintiff was not required to prove the exact day alleged, but could show that it was made at a different time; therefore the variance between the date alleged and the date proved was immaterial.

The third assignment of error is that the court erred in

admitting plaintiff's notice of lien, on the ground that the contract declared upon and stated in the notice of lien is an express one, and that the testimony shows an implied contract —"a promise to pay on a *quantum meruit;*" that there was a fatal variance between the facts as proven and admitted and the allegations of the complaint, and the contract and facts set forth in the notice of lien. The plaintiff testified that the agreement in regard to wages was that they should be made all right, or, which is the same thing, that they should be what the plaintiff's services were reasonably worth. Millar v. Cuddy, 43 Mich. 273, 5 N. W. 316; 38 Am. Rep. 181. In other words they were, in expressed terms, to be what the law would have implied if the parties had been silent on the subject of wages; for it is well settled that when one requests another to perform services for him, and no provision is made for compensation, the law implies a promise to pay what they are reasonably worth. But, as stated by Lord KENYON, C. J., in Cutter v. Powell, 6 Term R. 324: "Where parties have come to an express contract none can be implied, has prevailed so long as to be reduced to an axiom in law." Conditions, however, not expressed, may be implied from the expressed terms of an express contract; as, in a contract for the sale of goods which is silent as to the time of delivery, a reasonable time will be implied. In this and similar instances what is implied is as much a part of the express contract as the terms which are expressed. 1 Beach, Cont., sec. 710, and cases cited. "When an express promise is the same as the law implies, an action lies on either of them." 1 Beach, Cont., sec. 646. The fact that the express promise in respect to wages was the same as the law would have implied had no express promise been made did not make the contract an implied one or change its character as an entire expressed contract.

This brings us to the consideration of the question of the alleged fatal variance between the contract as proved and the

contract as set forth in the complaint and notice of lien. The agreement of the mining company, made by its general superintendent, was that the wages should be "made all right." It is evident, not only from that stipulation, but from the fact that the company paid the plaintiff at least $673 for his services, that they were not to be gratuitously rendered, but that the plaintiff was to be paid for his services what they were reasonably worth. The amount of their worth was certain because it could be made certain by proof of the reasonable value of the services. The general superintendent of the company and the plaintiff, having, in the adjustment before mentioned, made the amount certain, other evidence respecting the same, in the absence of an allegation and proof of bad faith, was unnecessary. The language of the contract in regard to wages evidently contemplated either an amicable adjustment of the same, or that the general superintendent should fix the same at what was right; that is, what they were reasonably worth. The value of the services having been amicably fixed in the adjustment mentioned, and the notice of lien, with the consent and approval of the general superintendent of the company, having been made, the only variance between the contract set forth in the complaint and notice of lien and the proof and admitted facts is the difference between $2,000 and the less amount shown, by the evidence. The maxim, "Id certum est quod certum reddi potest," is logical, as well as a rule of law, and is applicable in construing contracts of the character of the one in question. In the opinion delivered by SHARSWOOD, J., in the case of Thompson v. Stevens, 71 Pa. 161, the maxim was applied to a contract similar to the one at bar. In that case the plaintiff recovered a judgment, which was affirmed, for $10,000, on an express contract, which, as stated in the opinion, provided "that, if she (the plaintiff) would stay with him (the testator) as long as he lived, he would provide and give her full plenty after he was gone, so that she need not work." It appears that the testator

in his will bequeathed to plaintiff $2,000. Notwithstanding this bequest, a number of witnesses were permitted to testify to the character and value of the services. Justice SHARSWOOD, after stating the maxim before quoted herein, said: "We see no error in the manner in which the plaintiff's right to recover under the alleged express contract was submitted to the jury." In Wildman v. Glossop, 1 Barn. & Ald. 12, Lord ELLENBOROUGH, C. J., said: "The word 'certum' must, in a variety of cases, refer to an indefinite quantity at the time the contract is made, and must mean a quantity which is to be ascertained according to the maxim, 'Id certum est quod certum reddi potest.'" And in Palmer v. Moxon, 2 Maule & S. 50 (Broom, Leg. Max. 625, 626, note 1), the same eminent judge said: "And where the law requires a particular thing to be done, but does not limit any period within which it must be done, the act required must be done within a reasonable time; and a reasonable time is capable of being ascertained by evidence, and, when ascertained, is as fixed and certain as if specified by act of parliament." In the case at bar, as the value of plaintiff's services was capable of being ascertained by evidence, the rate of wages which the mining company was obligated by the contract to pay was certain, and certainly, after the amicable adjustment of the parties, it was proper to allege, in declaring upon the contract, that by its terms the defendant company agreed to pay the wages fixed in the adjustment by the general superintendent on behalf of the company. In place of the rate of wages so fixed, the complaint and notice of lien stated a greater rate, and the defendant company, in its answer, alleged a less rate was to be paid, but only upon certain alleged conditions. The abstract herein contains no evidence in support of these allegations of the answer, nor was it claimed by counsel for the appellant, either in their brief or argument, that any such evidence was introduced. The variance between the rate of wages proved by plaintiff's evidence and that alleged in

the complaint and stated in the notice of lien was not fatal, and, as the judgment rendered was for a sum much less than that alleged in the complaint and established by the adjustment, the appellant certainly has no just ground of complaint. In the case of Butler v. Mill Co., 28 Minn. 205, 9 N. W. 697, 41 Am. Rep. 277, the agreement under which the plaintiff recovered was "that plaintiff was to enter the service of the defendant in superintending the mason work of a mill, about to be erected by it, and the amount of the plaintiff's compensation therefor was to be left entirely to the defendant to determine and fix, after the services were performed, at such price and amount as, under all the circumstances, it (defendant) should consider right and proper."

Under this contract the defendant fixed the amount of compensation at a sum less than that claimed by the plaintiff, and less than the sum which the judge of the trial court found from the evidence the services were reasonably worth. The judgment rendered was not for the sum so found by the judge, but for the compensation fixed under the contract by the defendant. The judgment so rendered was affirmed on appeal, and in the opinion affirming the same the court said: "It was the duty of the defendant to determine and fix the amount of the compensation honestly and in good faith, and, if it did so fix it, the obligation of the contract was fulfilled, so far as that matter is concerned. It is not alleged in the pleadings nor found in the decision that the defendant acted fraudulently or in bad faith, and fraud or bad faith is not to be presumed. The mere fact that the defendant fixed the compensation at an amount considerably less than the learned judge of the trial court found, upon the evidence before him, the services were reasonably worth, is not of itself sufficient to justify an inference of fraud or bad faith."

In the case at bar it was the duty of the general superintendent to fix the compensation of plaintiff, and having done so with the concurrence of the plaintiff, in the absence of the

allegation and proof of bad faith, or that the sum fixed was unreasonable, the company was bound thereby. Fixing the wages by the general superintendent in the manner in which it was done did not change the obligation of the contract previously made, but was fulfillment of the same in relation to wages.

As a fourth assignment of error, it is urged that the plaintiff, under the objection of the defendant company, was permitted to testify as to the reasonable value of his services; but as he stated that they were worth what they were fixed at by the concurrence of himself and the general superintendent, and the court awarded a much less sum, it is apparent that the appellant has not been prejudiced thereby. As the plaintiff did not appeal, the judgment is conclusive as to him.

The fifth assignment of error is that the finding in the third finding of fact, that the mining company and plaintiff entered into a contract on the fifth day of December, 1890, by which the plaintiff was to become foreman of the company's property, at the stipulated compensation of $3 per day for the time employed by him, with a deduction of $1 per day for board; the following portion of the fourth finding, to-wit: "That plaintiff, pursuant to said agreement, entered into possession," etc., "and remained in possession," etc., "until August 14, 1894. . . . That between May 1, 1893, and August 14, 1894, he individually kept possession, etc., under said original contract as modified as to rate of compensation to $2 per day and plaintiff board himself;" and the following portion of the fifth finding: "That no agreement was ever made between the plaintiff and the defendant corporation as to any rate of compensation for the period from May 1, 1893, to August 14, 1894, but the reasonable value of the services was at the rate of $60 per month,"—are inconsistent with each other, and do not conform to the pleading and proof. The rate of the compensation per day in each of these findings is the same, viz., $2. They are inconsistent with each other in regard to

the contract and with the evidence. In the equity case of Clawson v. Wallace, 16 Utah 300, 52 Pac. 9, this court held, in an opinion delivered by Justice MINER, that the court in an equity case "may go behind the findings and decree of the trial court, consider all the evidence, decide on which side the preponderance thereof is, ascertain whether or not the proof justifies the findings and decree, and modify or set aside the findings and decree." In the equity case of North Point Consol. Irr. Co. v. Utah & S. L. Canal Co., 16 Utah 246, 52 Pac. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607, the court held that "it is only when the evidence as to a fact found to exist or not to exist, is so evenly balanced, or the proof is so unsatisfactory, as to cause the mind to hesitate and pause as to the side on which it preponderates, and leave the court in serious doubt, that the appellate court will be bound by the findings of the trial court." See, also, Whittaker v. Ferguson, 16 Utah 240, 51 Pac. 980; Stevens Implement Co. v. South Ogden Land, Building & Improvement Co., 20 Utah 267, 58 Pac. 843; Schroeder v. Pratt, 21 Utah 176, 60 Pac. 512. The plaintiff testified that he was employed by the mining company early in December, 1890, and that he served the company under such employment from the time of his employment up to August 16, 1894. In respect to the wages, the plaintiff further testified that William Groesbeck, the general superintendent, by whom he was employed, agreed to make the wages all right, and that he afterwards, on the sixteenth of August, 1894, with the concurrence of plaintiff, fixed the wages at the rate hereinbefore stated. This testimony of the plaintiff is not contradicted, except by the statement of William Groesbeck that he agreed to pay the plaintiff $3 per day, and he (the plaintiff) to board himself. William Groesbeck did not deny the statement of plaintiff in regard to the adjustment of the wages. His statement as to the wages agreed upon is different from the allegations of the answer upon that subject, and is irreconcilable with the rate

of wages fixed in the adjustment of the same by himself and plaintiff. The preponderance of the evidence is clearly in favor of the plaintiff, and warrants the setting aside of said inconsistent findings, and the making in their stead findings in accordance with. the clear preponderance of the evidence. We therefore set aside the inconsistent findings, and find that the mining company, in the contract entered into by the parties in December, 1890, agreed and obligated itself to pay to the plaintiff the wages afterwards fixed by the general superintendent, as follows: Six dollars per day from December, 1890, to September, 1893, and $60 per month from September 1, 1893, up to August 16, 1894. As the plaintiff, however, has not appealed from the judgment, which is for a less sum, he is bound thereby, and in respect to him we can not modify or reverse the same.

The sixth assignment is that "the court erred in rendering judgment upon the findings as made, for the reason that it was apparent that the claim of lien was not made in good faith." This assignment is untenable, because the want of good faith was not in issue by the pleadings, and it does not appear to have been raised at the trial, and is not one of the assignments in the petition in error, and was raised for the first time in appellant's brief.

The seventh assignment is that the court erred in awarding interest on the sum awarded. We do not think that the allowance of interest was error.

This disposes of all the questions presented in the brief and argument of counsel for appellant. The decree of the lower court is affirmed, with costs.

MINER, C. J., and BARTCH, J., concur.