## GILBOURNE v. OREGON SHORT LINE RAILROAD COMPANY.

No. 2112. Decided December 1, 1910. On Application for Rehearing March 31, 1911 (114 Pac. 532).

1. EVIDENCE—DEMONSTRATIVE EVIDENCE—ADMISSIBILITY. The testimony of an engine foreman of a switching crew that the frame of a broken hand lantern shown him was the same style of lantern as on the rear of a switch engine at the time of an accident is admissible to illustrate the kind of lantern on the engine at the time. (Page 87.)

2. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE. Where the uncontradicted evidence showed that a switch engine was equipped with a red lantern, and the only conflict in the evidence was as to whether the lantern was burning at a particular time, the error, if any, in permitting a witness, shown the frame of a broken hand lantern, to testify that it was the same style as the one on the engine at the time, was harmless. (Page 87.)

3. RAILROADS—INJURY TO LICENSEE—VIOLATION OF RULES OF EMPLOYMENT—NEGLIGENCE. Where a violation of a rule of railroad companies adopting rules for their mutual benefit for the transfer of cars from the yards of either to the other had been tacitly sanctioned, a violation by an employee at a particular

time was not negligence *per se*,[1] so as to prevent recovery from one of the roads for injury to an employee of the other road resulting from a collision. (Page 88.)

4. MASTER AND SERVANT—INJURY TO SERVANT—VIOLATION OF RULES OF EMPLOYMENT—NEGLIGENCE. A servant disregarding the rules of his master governing his conduct while in the performance of his duties is negligent, and, where the disregard of a rule proximately contributed to an injury, he may not recover therefor. (Page 89.)

5. RAILROADS—INJURY TO SERVANT OF OTHER COMPANY—VIOLATION OF RULES OF EMPLOYMENT—NEGLIGENCE. Where two railway companies adopted rules for the transfer of cars from the yards of either to the other, and a servant of one of the companies violated the rules while engaged in the work of transferring cars, and the violation proximately contributed to a collision of trains in which he received injury, his negligence could be taken advantage of as a defense by the other company. (Page 89.)

6. PLEADING—ISSUES—EVIDENCE. Where a railroad company introduced in evidence rules adopted by it and another company for their mutual benefit, though outside of the issues, it could not complain of proof that the latter company had habitually and tacitly sanctioned a violation by its servants of such rules, especially where the court withdrew from the jury evidence of such habitual violations. (Page 90.)

7. RAILROADS—INJURIES TO PERSON ON TRAIN—CONTRIBUTORY NEGLIGENCE. Whether an engineer injured while in the yards of another company engaged in transferring cars was guilty of contributory negligence in leaving the cab of the engine and in failing to keep a proper lookout for his own safety and to observe the rules designed to prevent collisions between trains *held* under the evidence for the jury. (Page 92.)

8. MASTER AND SERVANT—REGULATION OF EMPLOYMENT—RULES. A master may make such reasonable rules as are necessary for the conduct of his business and the safety of his employees, and, where his business is complicated and the safety of the employment depends to a large extent on each servant performing his duties in a specified manner, the master must promulgate reasonable rules which, if observed by the servants, will give them reasonable protection from injury. (Page 93.)

9. MASTER AND SERVANT—RULES OF EMPLOYMENT—DUTY OF SERVANT. A servant must observe all reasonable rules promulgated by the master for his safety, and he may not justify a disobedience thereof by proving that the rules were unnecessary, or that he adopted another method equally safe. (Page 94.)

---

[1] Boyle v. Union Pac. R. Co., 25 Utah 421; 71 Pac. 988.

10. RAILROADS—INJURIES TO LICENSEES—EMPLOYEES OF OTHER COM-
    PANY—RULES OF EMPLOYMENT—DUTY OF SERVANT. Where two
    railroad companies adopted for their mutual benefit reasonable
    rules for the transfer of cars from the yards of either to the
    other, an engineer of one company operating his engine in the
    yards of the other engaged in the work of transferring cars
    must comply with the rules, unless they have been habitually
    disobeyed for such a time as to raise a presumption that they
    had been abrogated; and, where he is injured in a collision of
    trains resulting from such disobedience, he cannot recover.
    (Page 95.)

11. RAILROADS—COLLISION OF TRAINS—CONTRIBUTORY NEGLIGENCE—
    INSTRUCTIONS. Where, in an action for injuries to an engineer
    of a railroad company in a collision while in the yards of
    defendant company engaged in transferring cars, the evidence
    showed that the companies had adopted rules for their mutual
    benefit for the transfer of cars from the yards of either to the
    other, and that the rules were violated, that the engineer left
    his cab and took no precautions to protect himself from danger,
    and that he did not heed warnings given him, and the court
    charged that the employees of the defendant must exercise
    such degree of caution as to speed and keeping a lookout as was
    reasonably adequate to prevent a collision, an instruction that
    the fact that the engineer did not keep a lookout for approach-
    ing cars could not avail and could not defeat a recovery, etc.,
    was erroneous. (Page 96.)

12. RAILROADS—ACCIDENTS TO TRAINS—RULES OF EMPLOYMENT—CARE
    REQUIRED. Where two railway companies adopted rules for
    their mutual benefit for the transfer of cars from the yards
    of either to the other, the employees of the companies must
    run their cars in the yards with such diligence as to speed and
    lookout as was reasonably adequate to prevent collisions. (Page
    97.)
    STRAUP, C. J., dissenting.


ON APPLICATION FOR REHEARING.

13. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.
    Where the jury found for a party on an issue, he could not com-
    plain of errors in the instructions submitting such issue. (Page
    110.)

14. APPEAL AND ERROR—INSTRUCTIONS—REVIEW. An instruction not
    assigned as error by either party is not reviewable on appeal.
    (Page 110.)

15. APPEAL AND ERROR—CROSS-ASSIGNMENT OF ERROR—NECESSITY. Where respondent has no cross-appeal, and does not assign cross-errors, the Supreme Court cannot review a decision in favor of appellant.[2] (Page 110.)

16. RAILROAD—COLLISIONS—CONTRIBUTORY NEGLIGENCE. An engineer of a railroad company who, while engaged in transferring cars in the yards of another company, does all that common prudence and the rules under which he is operating the engine required to protect it against collision, must continue to exercise ordinary care for his own safety. (Page 114.)

17. RAILROADS—INJURIES TO SERVANT OF OTHER COMPANY—CONTRIBUTORY NEGLIGENCE. What is ordinary care for an engineer of a railroad company while at work in transferring cars in the yards of another company pursuant to agreements between the two companies is generally for the jury. (Page 119.)
STRAUP, J., dissenting.

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Mike D. Gilbourne against the Oregon Short Line Railroad Company.

Judgment for plaintiff. Defendant appeals.

REVERSED, AND NEW TRIAL ORDERED.

*Parley L. Williams, George H. Smith,* and *Frank K. Nebeker* for appellant.

*Powers & Marioneaux* and *J. W. McKinney* for respondent.

### STATEMENT OF FACTS.

This is an action for personal injuries alleged to have been sustained by plaintiff through the negligence of defendant. Plaintiff, at the time he received the injuries com-

---

[2] Betz v. People's Bldg., Loan & Savings Ass'n, 23 Utah, 604, 65 Pac. 592; Sanberg v. Victor Gold, etc., Mining Co., 24 Utah, 1, 66 Pac. 360; Snyder v. Pike, 30 Utah, 102, 83 Pac. 692.

plained of, was, and for about four or five years prior thereto had been, in the employ of the Rio Grande Western Railway Company, which, for the sake of brevity, we shall hereafter refer to as the "Rio Grande Company." His business was that of fireman and locomotive engineer. For about two weeks immediately prior to the accident complained of, plaintiff had been engaged in switching in the yards of the Rio Grande Company, which are situated about two blocks west and south of the yards of defendant, the Oregon Short Line Company, hereafter referred to as the "Short Line Company." During the two weeks referred to, plaintiff was frequently required to switch and transfer cars from the yards of the Rio Grande Company to the yards of the Short Line Company. The transferring of the cars from the yards of one company to the yards of the other was generally done by a switching or transfer crew, consisting of a foreman known as engine foreman, a locomotive engineer, and two switchmen. The members of the crew were under the direction of the engine foreman, and, in his absence, the locomotive engineer acted as foreman. They all worked substantially together, and accompanied the engine in whatever service it performed. The crew, of which plaintiff was a member, went to work at one o'clock p. m. in the afternoon, and quit work about midnight. On the evening of May 6, 1907, this crew, in charge of a Mr. Kelley, the engine foreman, with plaintiff as locomotive engineer, took some freight cars from the yards of the Rio Grande Company over to the yards of the Short Line Company. After setting the cars transferred by them on one of the tracks in the Short Line yards, the crew, with the engine, proceeded south some distance along one of the main tracks in the Short Line yards, and stopped about three-fourths of a block from the yardmaster's office. Kelley, the foreman, left the engine, and walked over to the office to deliver his bills and get a receipt for the cars which he and his crew had just transferred. While waiting for Kelley to return, the engineer, plaintiff herein, and the fireman, got out of the cab and went to the front of the

engine, where the two switchmen were leaning up against it, and plaintiff proceeded to climb upon the front part of the engine, and to wipe off the glass on the headlight. After doing this, plaintiff returned to the ground in front of the engine, where the fireman and the two switchmen were standing. The engine had been standing at this place from three to fifteen minutes when a train of cars that was being pushed south on this track by a switch engine operated by a switching crew of the Short Line Company collided with it. The force of the collision propelled the Rio Grande engine forward, knocked plaintiff to the ground, and the wheels of the engine ran over his left leg. Because of the injury, it became necessary for plaintiff to have his leg amputated.

The rules of the Rio Grande, as well as those of the Short Line Company, in force at the time of the accident, provided that a switch engine should be equipped with a headlight on the front end, and with a headlight or two white lights on the rear. The white lights, when used, are set in brackets, which are fastened on the corners of the tender at the rear of the engine. The brackets on the engine operated by plaintiff on the evening in question were out of repair. One was crushed and the other broken off. Because of the condition of the brackets, the fireman took an ordinary red lantern, and bent the bail or handle, lighted the lantern, and hung it onto a rung of the ladder at the rear of the engine. The fireman and engine foreman of the Rio Grande switching crew testified that this lantern was burning and reflecting light when the engine stopped at the place where the collision occurred. Members of the Short Line crew testified that there were no lights on the rear of the engine just prior to and at the time of the collision. One witness testified that soon after the collision he saw what he took to be the frame of the lantern that was on the rear of the Rio Grande engine lying on the ground just back of where the engine was standing at the time it was struck by the Short Line train. Some of the other witnesses testified that immediately after the collision while searching for the lantern they found pieces of red glass on the ground at a point about where the rear

of the engine was when it was struck; that, in their judgment, these pieces of glass were fragments of the globe of a red lantern.

The alleged negligence of the Short Line Company upon which plaintiff relies consisted in the running of its engine and the train of cars mentioned at a high rate of speed, in omitting to have a flagman or any person on the leading or forward car of the train "charged with the duty of keeping a lookout so as to give warning to the engineer in charge of the engine pushing the said cars in case of need," and in carelessly and negligently running and operating the said engine and cars without keeping a diligent or any lookout ahead, and in carelessly and negligently failing and omitting to give any warning to plaintiff or other person upon the Rio Grande engine mentioned of the approach of the train of cars that was being pushed by defendant's engine. The defendant denied that it was negligent and alleged contributory negligence on the part of plaintiff.

The case was tried to a jury, who returned a verdict in favor of plaintiff, assessing his damages at eight thousand, five hundred dollars. From the judgment entered on the verdict, the defendant has brought the case to this court on appeal.

McCARTY, J. (after stating the facts as above).

During the examination in chief of witness Kelley, the engine foreman of the Rio Grande switching crew on the night in question, he was shown the frame of a hand lantern that was crushed and broken, and was asked if it was the same style of lantern as the one he claimed was on the rear of the Rio Grande switch engine at the time of the collision, and he answered that it was. Timely objections were made to this evidence by the appellant, on the ground that it was incompetent and immaterial for the reason that the lantern exhibited to the witness was not shown to be the same lantern that was on the rear of the Rio Grande engine at the time of the accident. The record shows that the lantern which plaintiff claimed was on the rear of the engine in question

at the time of the accident could not be found. No claim was made that the lantern exhibited to the witness was the same lantern that was broken in the collision, nor was it exhibited and the evidence complained of introduced for the purpose of conveying the impression that it was the same lantern. The only purpose for which the lantern was exhibited, as shown by the record, was to illustrate and show to the jury the kind of lantern which plaintiff claimed was on the rear of his engine at the time of the accident. This, under the circumstances, we think he had a right to do. That illustrations of this kind may be made in the trial of a case is too well settled to admit of serious discussion. (17 Cyc. 293.) Moreover, the evidence, without conflict, shows that a red lantern was on the rear of the engine mentioned at the time of the collision. The only conflict in the evidence relating to the lantern was as to whether it was burning and reflecting light at the time of and just prior to the accident. Therefore we fail to see in what way the evidence complained of was prejudicial to appellant, even though it should be conceded, for the sake of argument, that its admission, as an abstract proposition of law, was technical error.

When the evidence was all in and both sides had rested, appellant asked for a peremptory instruction directing a verdict in its favor. The refusal of the court to so instruct the jury is assigned as error. The contention made in support of this assignment is that respondent as a matter of law was guilty of contributory negligence in substituting for and using upon the rear end of the engine in question a red light in lieu of the white lights required by the rules of both the Rio Grande and Short Line Companies. The undisputed evidence shows that for several years preceding the collision the switch engines used by the Rio Grande Company in its yards and in the transferring of cars from its own yards to the yards of the Short Line Company were usually equipped on the rear end with red lights, the same as the engine in question was equipped on the night of the accident. E. W. Bywater, who, for several years next preceding the collision,

was employed by the Short Line Company in its yards as fireman and engineer, was called as a witness, and, in answer to the following questions asked by counsel for appellant, Short Line Company, testified as follows: "Q. You say you had been in these yards for several years? A. Yes, sir. Q. You say you saw Rio Grande switch engines over there at various times? A. Yes, sir. Q. Before this? A. Yes, sir. Q. Had you seen them at nights? A. Yes, sir. Q. Did you observe the lights they carried usually? A. Whenever I could see them. Q. Whenever you saw them, and could observe the lights on the rear end, what were the lights? A. As a rule they carried a red light. Q. Red light or headlight? A. I never saw an engine before the accident with a headlight. Q. Did you see them with white lights? A. No, sir. Q. Never saw them with white lights? A. No, sir." It might well be inferred from this and other evidence in the record of the same import that both the Rio Grande and Short Line Companies at least tacitly sanctioned the violation of the rule requiring switch engines to be equipped on the rear end with a headlight or two white lights. Therefore the infraction of this rule by the respondent on the occasion in question was not negligence *per se,* as counsel for appellant seem to contend. (*Boyle v. Union Pac. R. R. Co.,* 25 Utah 421, 71 Pac. 988; 1 Labatt, Master and servant, section 366; 26 Cyc. 1269, 1270.) And upon this issue the court instructed the jury as follows: "(9) You are instructed that it is negligence on the part of a servant to disregard or fail to observe the rules of his master or employer, designed and intended to govern his conduct while employed in the duties that he is engaged to perform; and, if his disregard or violation of any such rules proximately contribute to any injury complained of, he cannot recover. And in this case you are further instructed that if you find that plaintiff did violate any of the rules of the Rio Grande Western Railway Company, and that such neglect upon his part proximately contributed to the accident, then, under such circumstances, his negligence could be taken advantage of as a defense by the

Oregon Short Line in this action, and would be    4, 5
a complete bar to his right to recover, and under such
circumstances your verdict should be for the defendant."
It will thus be observed that the question of respondent's
alleged contributory negligence in failing to equip the en-
gine he was operating on the evening of the accident with
the kind of lights required by the rules of the company was
fully submitted to the jury.

Appellant further contends that the court erred in permit-
ting respondent to introduce evidence tending to show a
waiver of the rules referred to on the part of the Rio Grande
Company, for the reason that there was no issue presented
regarding the abrogation, modification, or waiver of the rules
by the company. It appears that the transfer of cars from
the yards of one company to the yards of the other was car-
ried on pursuant to certain rules and regulations known as
the "Standard Rules and Regulations of the American Rail-
way Association." These rules and regulations, so far as
material here, were the same as the rules and regulations
under consideration. In its answer, appellant, among other
things, alleged, in substance, quoting from the statement of
the issues contained in its printed brief, "that by these rules
it was the duty of the Rio Grande Company to equip its
locomotives used in this transfer service with a headlight on
the rear, as well as on the front, or, in lieu of a headlight
on the rear, to equip such locomotive with two white lights
on the rear thereof;  .  .  .   that it was also the duty of
said Rio Grande Company to require its employees to keep
a lookout in handling these locomotives, and protect them-
selves against collisions; that it had negligently failed to do
these things, but, on the contrary, in violation of the rules
governing the operation in question, sent said locomotive
into the railroad yards of the defendant not equipped with
such lights, and permitted its employees to stop such loco-
motives and remain upon a certain main line in such yards
without displaying any lights on the rear thereof."   No-
where in its answer does the appellant allege that either re-
spondent, the engine foreman, or any other member of the

Rio Grande switching crew was guilty of negligence because of any violation of these rules, or because of the violation of the rules of the Rio Grande Company, which, so far as material here, were the same as the "Standard Rules and Regulations of the American Railway Association." But, on the contrary, appellant specifically alleges that the Rio Grande Company "sent the said locomotive into the yards of the defendant not equipped with such lights," etc. The only allegation in the answer charging negligence on the part of respondent is the general allegation "that the injuries received by plaintiff, and the damages resulting therefrom, if any, were caused by an accident which resulted from the wrongful and negligent acts, conduct, and omissions of the plaintiff." Under the issues tendered by these allegations of the answer, appellant was permitted to introduce in evidence the rules hereinbefore referred to of the Rio Grande and Short Line Companies, and to show, by cross-examination of respondent's witnesses, that the rules and regulations requiring that the switch engines should be equipped with certain kinds of lights were not observed and followed by respondent on the evening of the accident. Appellant, having thus opened up the question which it claims was outside of the issues, cannot be heard to complain because the court permitted respondent, on redirect examination of his witnesses, and by the introducing of other evidence, to show that the Rio Grande Company had habitually and for a long period of time tacitly sanctioned the violation of these rules. And, furthermore, the court, by giving the following instruction, withdrew the question from the jury, and they were in effect told not to consider it: "(14) You are instructed that in this action there is no issue made or presented that the rules governing the operation of switch engines or transfer engines in the yards of the Oregon Short Line were modified, changed, or abrogated in any manner or at all; and any evidence that may have been admitted in the case with reference to whether or not the Rio Grande Western switch engines had prior to the accident operated in the Oregon Short Line yards without being

equipped with white lights or a headlight on the rear of such engine, and in lieu thereof had used a red light, was not admitted for the purpose of proving or tending to prove any change, modification, or abrogation of the rule requiring switch engines to be equipped with a headlight on the rear of such engines, or, in the absence of such headlight, two white lights, and any such evidence must not be considered by you as proving or tending to prove any change, abrogation, or modification of such rule, because, as heretofore stated, there is no issue of that kind presented in this case."

It is further contended that respondent should as a matter of law be deemed guilty of contributory negligence because he left his position in the cab of the engine and went out upon the front of it, and failed to keep a proper lookout for his own safety, and for his alleged failure and neglect to observe the following rule of the Rio Grande Company which was in force at the time of the collision, namely: "All signals must be used directly in accordance with the rules; trainmen, engineers, and firemen must keep a constant lookout for signals." The evidence shows that at the time the engine was stopped at the point where it was standing when the collision occurred the glass on the headlight was a "little smoky," and the light was burning a "little dim," and respondent left the cab and got onto the front of the engine and wiped off the glass. Respondent testified that after he had cleaned the glass and was in the act of climbing down from the headlight to the ground, or about the time he reached the ground in front of the engine, the collision occurred. John A. Douglass, one of the switchmen, was called as a witness, and his testimony tended to show that the collision occurred either as respondent was climbing down from the headlight or immediately after he reached the ground. The fireman, however, testified that he, the two switchmen, and respondent were sitting on the pilot beam in front of the engine, and had been in that position for ten or fifteen minutes, when the accident occurred. J. W. Love, a witness for appellant, testified that he was a member of the switching crew who were operating the Short Line train at the time

of the collision; that he was about one hundred and twenty-five yards south of the Rio Grande engine when the accident occurred; that just before the collision he gave respondent and the other members of the Rio Grande switching crew signals "to come out of there—move forward with their engine." He said, quoting him literally: "I gave come-ahead signals to them with my lantern. They apparently did not pay any attention to them, because they did not move. So, I gave others. Then I whistled with my mouth to attract attention. That was a shrill, sharp whistle. They would be able to hear it, but they paid no attention apparently, because it (the engine) did not move." He further testified that he went to the scene of the accident immediately after it occurred, saw respondent and the other members of the Rio Grande crew there, and spoke to them about the signals he had given them to move their engine onto another track. He said, again quoting: "I asked them if they saw the signals, and they said yes; and I asked them why they didn't come out of there then, and they said they didn't know who it was, and Mr. Gilbourne had said it might be Kelley, and, if it was, he could come down there if he wanted them." On cross-examination he testified in part as follows: "I certainly had in mind that Gilbourne's engine standing there was in danger, for I always considered a man standing on the main line in danger. I wanted this engine out of the way, but they apparently did not observe or pay any attention. I could not tell how far our train was away when I whistled. I don't think there was any immediate danger at that time." Gilbourne testified that he did not see the signals given by Love; that, if he had seen them, he would have moved ahead with the engine. In view of the circumstances under which respondent left the cab and went to the front of the engine, we are not prepared to say that in doing so he was as a matter of law guilty of contributory negligence. We think this matter, and the question as to whether he kept a proper lookout for signals and for approaching cars during the time the engine

was standing on the track where the collision occurred, were questions of fact for the jury to determine.

In regard to the use of a red light on the rear of the engine on the night in question, instead of the kind of light required by the rules of the company, and the alleged failure of respondent to keep a proper lookout for signals and for approaching cars during the time his engine was standing on the track before the collision occurred, the court instructed the jury in part as follows: "(12a) You are instructed that if you believe from the evidence that while the plaintiff's engine was standing in the yard it had a red light burning on the tender end of the engine, and that this was the usual and customary manner of warning other trains approaching on the same track, or was all the warning that ordinary care required, and that it was sufficient to prevent other trains or cars being run against the plaintiff's engine, if the persons operated them with ordinary care, then the plaintiff fully met the requirements of ordinary care on his part in this respect, *and the fact that the plaintiff did not in addition keep a lookout for approaching cars cannot avail the defendant nor in such circumstances would the fact, if it be a fact, that plaintiff was sitting on the pilot of his engine, be any obstacle to his right to recover damages in this case.*" Appellant excepted to and assigns as error the giving of this instruction. The court by giving that part of the instruction not italicized, in effect, told the jury that, if they found from the evidence that the installing and using of a red light on the rear of the engine was as efficient a method of protecting it as the kind of lights required by the rules, then, in that event, respondent did not commit a breach of any duty he owed the railroad company by substituting a red light for the kind of lights required by the rules. Now, the rule is elementary that a master has a right to make **8** such reasonable rules and regulations as are necessary for the conduct of his business and the guidance and safety of his employees. In fact, in a complicated business such as railroading, in which a large number of persons are employed, and the safety of the employment, to a large

extent, depends upon each employee performing his duties promptly and in a specified manner, it is the duty of the master to promulgate reasonable rules and regulations, which, if observed by the servants, will give them reasonable protection from injury. (1 Labatt, Master and Servant, section 210; 26 Cyc. 1157, and cases cited in note.) And the law is equally well settled that the servant is under a corresponding duty to faithfully observe and comply with all reasonable rules promulgated and furnished him by the master for his guidance and safety, and he cannot justify himself in his disobedience of a rule by showing that it was unnecessary, or that he adopted and followed some other method which was equally as safe and as efficient as the rule promulgated and furnished him by the master. (26 Cyc. 1161, 1270; Bailey's Mast. Liab. to Serv., pp. 72-85.) Respondent concedes this to be the law, and cites, with approval, 1 Labatt, Mast. and Serv., section 367, wherein the author says:

"Every breach of a rule represents a breach of a contractual obligation which has been either expressly assumed by the servant, or is implied by the fact of his having accepted or continued in the given employment with due notice of the existence of the rule. The servant's agreement is that whatever may have been, apart from the rule, the standard of proper care, under the circumstances, the rule itself is to define that standard as between the servant and his master, as long as the former remains at work. That this is really the prevailing view, even in the two states above mentioned (New York and Texas), is abundantly evident from numerous decisions in which recovery has been denied as a matter of law for the reason that the injury was caused by the violation of a rule."

Respondent insists, however, that this rule is binding only as between master and servant, and that it does not obtain in cases where the servant is injured by the act of a stranger. As stated by Mr. Labatt, the principle upon which a servant is debarred from recovering damages from his master where he has been injured because of his failure to observe a rule of his master is that the servant is under a contractual duty to obey his master, and his failure to do so is held to be negligence. And the authorities seem to hold that, where a

servant has been injured while violating a rule of his master by the negligent act of a stranger to whom the servant owed no contractual duty and for whose benefit the rule was not made, such stranger cannot successfully resist the servant's claim for damages by pleading the servant's violation of the rule. But this is not that kind of a case. In the case at bar each of the railroad companies mentioned operated its trains, switch engines, and transferred cars from the yards of one company to the yards of the other under and in accordance with the "Standard Rules of the American Railway Association." The rules of this association, so far as material here, were adopted by the two companies for their mutual benefit. And respondent, while operating his engine in the yards of the Short Line Company, owed the same duty to that company to observe the rules common to both companies to avoid injury to its property and employees as he owed to the Rio Grande Company in that respect. It is conceded that these rules, which were incorporated in and made a part of the rules of the Rio Grande Company, provided that switch engines should be equipped with either a headlight or two white lights on the tender end of such engines, and the evidence shows that respondent was familiar with these rules. In fact, he himself so testified. No claim was made, nor was there any evidence introduced to show, that the rules were unreasonable, or that they prescribed a negligent or dangerous method of doing the work. It was therefore the duty of respondent to faithfully observe the rules, unless they had been habitually disobeyed in such manner and for such a length of time as to raise a presumption that the Rio Grande Company had notice of such habitual and continued disobedience, and that respondent was warranted in acting upon the assumption that the company had abrogated the rules. (1 Labatt, Master and Servant, section 232.) But in this case, as we have observed, the question of whether there had been any change, modification, or an abrogation of the rule under consideration was withdrawn by the giving of instruction fourteen. The withdrawal of that question from the jury, whether

right or wrong—a question we are not called upon to determine—narrowed this phase of the case to the simple proposition of whether or not the violation of the rule directly contributed to and was a proximate cause of the collision.

It is further contended on behalf of appellant, and we think the contention is well founded, that the court, by giving that part of instruction 12a which we have italicized, withdrew from the jury the defense of contributory negligence so far as it was based upon respondent's act in leaving the cab and going to the front of the engine, and his failure to keep a lookout for approaching cars along the track upon which the engine was standing. By giving the italicized part of this instruction, appellant was deprived of whatever benefit it might otherwise have derived from the evidence tending to show that respondent, after cleaning the headlight of the engine, took and occupied a position on the pilot beam of his engine, and· that he failed to obey the signals given by the witness Love just prior to the collision for him to move forward with his engine, and that, after cleaning the glass of the headlight, he, together with other members of the crew, sat down on the pilot beam of the engine where they could not keep a lookout to the rear of the engine for approaching cars from the north, and remained in that position anywhere from ten to fifteen minutes. This evidence, if believed by the jury, might have resulted in a verdict in favor of appellant, provided the issue in support of which it was admitted had not been withdrawn by the giving of the last-mentioned instruction. Furthermore, the court, in defining the degree of care and caution that the switching crew who were operating the Short Line train at the time of the accident were legally bound to exercise to avoid a collision, charged the jury as follows: "(15) You are further instructed that it was the duty of the employees of the defendant company to run and manage the cars in question with such degree of diligence and caution in respect to speed and keeping a lookout ahead as was reasonably adequate to prevent them colliding with other engines or cars standing in the yards. This was the duty of the

employees of the defendant company without regard to any rule of the company. If this duty was not observed the company was guilty of negligence. . . ." This instruction, so far as it went, correctly defined the degree of care that the Short Line Company, acting through its agents and servants, was legally bound to exercise in operating its train on the occasion in question. And the switching crew of which respondent was a member were under a corresponding duty to exercise due care for their own safety. The legal duties and obligations of the two switching crews in this respect were coextensive; that is, the same degree of care and diligence was demanded of each. Or, to state the proposition negatively, neither crew under the circumstances was bound to exercise a greater degree of care and diligence than could legally be required of the other. The court in defining the degree of care that the crew of the Short Line Company was bound to exercise to avoid a collision on the occasion in question stated the rule correctly. Moreover, respondent was an experienced locomotive engineer. He stopped and was holding his engine, upon a track along which he knew a train might pass at any moment. He was under all the authorities legally bound to use the same degree of care and caution that a prudent and cautious man skilled in the same kind of work would ordinarily use under the same or similar circumstances. The court by giving the italicized part of instruction 12a, not only invaded the province of the jury by in effect charging that certain conduct of respondent, if shown to have transpired, was not negligence, but fixed a much lower standard or degree of care and caution for respondent to exercise when operating his engine in the yards of appellant than that required of him by law, and a lower and different standard of care than that prescribed by instruction fifteen for the Short Line Company. The giving of the italicized part of the instruction 12a was clearly prejudicial, as it deprived appellant of a substantial right.

The judgment is reversed, with directions to the trial court to grant a new trial, costs of this appeal to be taxed against respondent.

FRICK, J. (concurring).

I concur. As I view the case, no other conclusion than the one arrived at by my associate, Mr. Justice McCarty, is permissible. The suggestion that the respondent in putting up the red lantern on the engine as a signal was in the same situation that a property owner is in who is required to guard a dangerous place by putting up barriers and signals is to my mind clearly untenable. Suppose that in the case of the owner of property some one had disregarded the signal and in coming in contact with the barrier erected by him had inflicted a personal injury upon him. Suppose, further, that in an action brought by such owner to recover damages for the injuries the defendant had pleaded contributory negligence on the part of the owner, and had supported that issue by some competent evidence. Under such circumstances, could an instruction which in effect directed the jury, if they found that the plaintiff had put up a red light and that such red light was a sufficient signal to warn all passers that a barrier had been put up, that in such event they might find for the plaintiff be sustained? Would not in such a case the plaintiff have to fail if the evidence justified a finding that, although he had put up a signal, yet if by the exercise of ordinary care he could have avoided the injury to himself, but did not do so? Would not the defendant at least be entitled to an instruction which incorporated the foregoing principles of law? Yet, as I view this case, the trial court disregarded the foregoing principles, and in effect withdrew the question of contributory negligence entirely from the jury. This I think is so because, if instruction No. 12a did not have such effect, it had no effect whatever, for the reason that by it the jury were authorized to find for respondent upon the conditions therein stated, regardless of anything else that may have been said in any other instruction upon the subject of contributory negli-

gence. This, in view of the issues and the evidence, as clearly pointed out by my associate, clearly constitutes reversible error.

STRAUP, C. J. (dissenting).

I dissent. The plaintiff was an employee of the Rio Grande Western Railroad Company. The relation of master and servant in no sense existed between him and the defendant, the Oregon Short Line Railroad Company. The first-named company delivered and received freight to and from the railroad yards of the last-named company. The plaintiff was an engineer of a switching and transfer crew of the first-named company, and at the time in question was engaged in transferring cars from its tracks or yards to the defendant's yard. After the cars had been switched to the defendant's yard and the engine detached, it was left standing on one of the tracks in the yard while the foreman of the switching crew went to the yardmaster's office nearby to deliver bills, and get a receipt for the cars transferred. A lighted red lantern was displayed on the rear of the engine. While awaiting the return of the foreman, the plaintiff wiped the headlight of his engine, and, according to his testimony and that of others, just as he finished, and was in the act of climbing down, the employees of the defendant, in operating a string of seven or eight cars at a speed of fifteen or eighteen miles an hour, without signal or warning of their approach, and without observing any lookout, ran against and collided with the plaintiff's engine and injured him. Others testified that the plaintiff at the time of the collision had finished wiping the headlight and was sitting on the pilot beam, awaiting the return of the foreman, and that other members of the crew were standing at the side of the engine or were leaning against the front end of it. The engine had been standing there from five to ten minutes before the collision. It was shown that the display of a red light on a car or engine or other object on the track indicated a danger and stop signal, and that such a light as was displayed on the rear of the engine could have been seen by the operatives

of approaching cars for a distance of half a mile or more, and that it was customary at nighttime, when detached engines were standing or moving about the yards, to display a red light on the rear of them.

The alleged negligence on the part of the defendant was that its operatives in approaching plaintiff's engine failed to give any warning or signal of their approach, failed to observe a reasonable lookout in advance of the cars operated by them, omitted to have a person stationed at the rear end of the cars operated by them, and operated the cars at a negligent speed. It was shown that by printed rules of the Rio Grande Western Railway Company, the Oregon Short Line Railroad Company, and the American Railway Association, switch engines were required to be equipped with a headlight or two white lights on the rear when operated in yards for the purpose of distinguishing them as such. The engine furnished the plaintiff on the night in question was not equipped in such manner. The brackets on the engine were broken off, or were out of repair, so that such lights could not be held in position on the engine. The defendant, in its answer, alleged, not that the plaintiff or any member of his crew was negligent in failing to display white lights or a headlight at the rear of the engine, but alleged with particularity that the Rio Grande Western Railway Company was negligent in such particular and in permitting the plaintiff to operate the engine in defendant's yards without being equipped as provided by the rules, and sought to impute the negligence of the Rio Grande Western Railway Company to the plaintiff. Nor was it alleged that the plaintiff or any member of his crew was guilty of negligence in failing to observe a reasonable lookout for the approach of locomotives or cars, but again the defendant alleged with particularity that the Rio Grande Western Railway Company was negligent in such regard, and that it failed and neglected to have its employees keep a diligent lookout.

Among other things, it was contended by the defendant that the operation of the switch engine in its yard without the display of a headlight or two white lights on the rear

of it as matter of law barred recovery on the part of the plaintiff. Much evidence was adduced on behalf of the plaintiff tending to show that it had been customary to operate switch engines in the defendant's yard without the display of such lights on the rear of the engine; that it was customary to display a red light on the rear; that a red light so displayed on the rear of an engine, or other object on the track, was indicative of a danger and stop signal; and that it was so regarded by railroad men operating in the yard, and that such a light as was displayed on the rear of the engine was plainly visible for a long distance, several blocks, to those operating approaching cars. The contention made by the defendant's train operatives, and as testified to by them, was not that they were misled by the display of a red light on the rear of plaintiff's engine, instead of white lights or a headlight, or that the display of such a red light was not plainly visible, or that such a red light did not indicate a danger or stop signal, but that no light at all was displayed on the rear of plaintiff's engine, and hence they, although observing a lookout in advance of the cars operated by them, did not discover the engine until within thirty feet of it when it was too late to avoid the collision; and that, had they discovered the engine within sixty or one hundred feet, they could have stopped the cars operated by them and avoided the collision. The plaintiff, however, produced evidence tending to show that a red light was displayed at the rear of his engine. And, had such been the case, I think it is conclusively shown that such a light was plainly visible for several blocks; that when displayed on an engine or car, or other object on a track, it indicated a danger and stop signal; that it was so regarded by railroad men operating in the yard; and that, had a reasonable lookout been observed by the defendant's train operatives in advance of the cars operated by them, the light could readily have been seen by them and the engine discovered in time to have avoided the collision. At any rate, there was ample evidence adduced tending to show such facts.

Upon the record, no serious contention is made with respect to the question of sufficiency of the evidence to show negligence upon the part of the train operatives. The main contention made by the defendant is that the plaintiff was not entitled to recover because the engine operated by him in the yard was operated in violation of the rules requiring the engine to be equipped on the rear with either a headlight or two white lights, and that the plaintiff was guilty of negligence because at the time of the collision he was sitting on the pilot beam, and did not himself observe a proper lookout for the approaching cars operated by the defendant's train operatives. The court charged the jury that it was "negligence on the part of a servant to disregard or fail to observe the rules of his master or employer, designed and intended to govern his conduct while employed in the duties that he is engaged to perform; and, if his disregard or violation of any such rules proximately contributed to any injury complained of, he cannot recover," and expressly charged the jury that if the plaintiff violated any of the rules of the Rio Grande Western Railway Company, his employer, and that such neglect upon his part proximately contributed to the accident, then, "under such circumstances, his negligence could be taken advantage of as a defense by the Oregon Short Line Railroad Company in this action and would be a complete bar to his right to recover." Again, the court charged that, though the jury should find that the defendant was negligent, yet if they further found "from the evidence that the proximate cause of the accident and injury was the negligence of the Rio Grande Western Railway Company, or any of its employees, either in its failure to equip the engine in question in accordance with the rules under which the yard was being operated, or in any other respect," then the plaintiff was not entitled to recover. The court further charged the jury that the plaintiff was required to exercise "reasonable and ordinary care to prevent accident and injury to himself, that he was required to exercise for his own safety the same degree of care that the defendant was charged with exercising toward him," and that if he

failed to exercise such care, or if he "violated or disregarded any of the rules of his employer in performing his work," and such failure or violation proximately contributed to his injury, he could not recover. The court also charged the jury that the defendant contended that the plaintiff was guilty of negligence in being in the situation in which he was at the time of the collision, and that if the plaintiff was guilty of negligence as claimed by the defendant, and that such negligence was a proximate cause of the injury, then he could not recover. The court also charged the jury that if they found that it was the duty or the practice of crews while switching in the yard to maintain a constant vigilance or lookout for their own protection, and for signals, and that if the plaintiff, or any member of his crew, was negligent in such respect, and that such negligence proximately contributed to the collision, then the plaintiff was not entitled to recover. It thus appears that the court, in express terms, gave the jury the principles of law contended for by the defendant, and specifically charged them that if plaintiff's engine was not equipped with a headlight or with two white lights on the rear thereof and as provided by the rules, or that if he disregarded any rule of his employer, or if his employer was itself negligent, or if any of its employees were negligent in any respect, or if the plaintiff failed to observe a vigilant lookout for his own protection, or for signals, or if the situation in which he had placed himself at the time of the collision was negligence, or if he otherwise had not exercised ordinary care for his own protection and safety, and if such violations or disregard of the rules, or the negligence, either upon behalf of himself, or that of his employer, or that of any employee of his employer, proximately contributed to the accident or collision, then the plaintiff was barred of recovery notwithstanding the negligence of the defendant. The defendant, therefore, had the benefit of all the principles of law contended for by it.

The plaintiff, of course, contended that the failure to equip the rear of the engine with a headlight or two white lights, or the fact of whether he was sitting on the beam

of the pilot, or was in the cab of his engine, or climbing down after wiping the headlight, was not the proximate cause of the collision. It was contended by him that the red light which was displayed by him was plainly visible for three or four blocks; that it indicated a danger or stop signal; that it readily could have been seen and the engine discovered in time to have avoided the collision had the defendant's operatives in approaching the engine observed a reasonable lookout in advance of the cars operated by them; and that hence the failure to observe such lookout, and to give a warning of the approach of their cars, and in operating them at a negligent speed, must in law be regarded the proximate cause of the collision. In other words, it was contended that the reason why the red light was not seen by defendant's train operatives, and the engine not discovered in time to have avoided the collision, was because no lookout was observed by the operatives in advance of the cars operated by them. And if the red light was not seen, and the engine not discovered by them because of their failure to observe a lookout, neither would they have seen the white lights had they, instead of the red lights, been displayed on the rear of the engine. Again, it must be borne in mind that the train operatives did not contend that such a red light, as was claimed by the plaintiff was displayed on the rear of the engine, would not have been plainly visible, or that such a light did not indicate a danger or stop signal, or that the defendant's train operatives in approaching the engine were misled or deceived by the display of such a red light, instead of two white lights. What was testified to by them was that no light at all was displayed on the rear of the engine. Now, the court, at the request of the defendant, having charged the jury as heretofore shown, then at the request of the plaintiff, and as bearing on the questions of contributory negligence and proximate cause of the collision, gave the jury paragraph 12a of the charge, and as set forth in the prevailing opinion. In this instruction the jury were told that if they found from the evidence that a red light was displayed on the rear of the engine, "and that this was the

usual and customary manner of warning other trains approaching on the same track, or was all the warning that ordinary care required, and that it was sufficient to prevent other trains or cars being run against plaintiff's engine, if the persons operated them with ordinary care, then the plaintiff met the requirements of ordinary care on his part in this respect," and the fact that he did not in addition keep a lookout for approaching cars, or that he was sitting on the pilot beam of the engine did not avail the defendant. This was but telling the jury that if the plaintiff had done all that ordinary care required of him, and that what he did was sufficient to protect his engine and prevent other trains or cars being run against it had the defendant's train operatives exercised ordinary care, then the fact that the plaintiff did not do some other or additional thing was immaterial; and likewise that if he had taken such precautions to protect his engine, and that they were sufficient to prevent other trains or cars being run against it had the defendant's train operatives themselves exercised ordinary care, then the fact that the plaintiff was sitting on the pilot beam or was in the cab of his engine would also be immaterial, for the reason that the position or situation of the plaintiff, whether on the pilot beam or in the cab, would not, in such case, be the proximate cause of the collision. The situation in such case would not be unlike one where a person was charged with negligently leaving an excavation unprotected, and where the evidence disclosed that the excavation was protected by a lighted red lantern. If, now, the jury should find that the placing of the lantern at the excavation was the usual and customary manner of guarding such an excavation and of warning those who might approach it, and that such a warning and protection was all that ordinary care required, and that it was sufficient to prevent those who might approach or come about the excavation from falling into it, or otherwise injuring themselves, if ordinary care is exercised on their part, then the fact that such accused person did not also remain at the excavation and keep a lookout, or did not do some other additional thing, or that he

left the excavation and went to bed, would be wholly imma-
terial; for if one had done all that ordinary prudence dicta-
ted, and all that ordinary care required of him, then he
ought not to be charged with negligence because he failed to
do some other or additional alleged thing.

It, however, is argued that the latter portion of the in-
struction took from the jury the question of plaintiff's situa-
tion about the engine and his conduct in respect of himself
observing a lookout for signals and the approach of cars. I
do not think the instruction open to such a contention, for
the court, in effect, told the jury that such matters were
immaterial only in the event of their finding that the dis-
play of a red light was the usual and customary manner of
warning approaching trains, or that it was all the warning
that ordinary care required, and that it was sufficient to pre-
vent other trains or cars being run against the engine if
those operating them themselves exercised ordinary care.
In other words, if what the plaintiff did in such particular
fully met the requirements of ordinary care, and was suffi-
cient to prevent trains or cars operated under ordinary care
being run against the engine, then, of course, plaintiff's sit-
ting on the pilot beam or his failure to observe a lookout,
whether negligent or not, could not be regarded the proxi-
mate cause of the collision. Such a principle upon such a
situation is not unlike another where the court also charged
the jury that if they found from the evidence "that the de-
fendant's servants in charge of defendant's train of cars
would have run upon the plaintiff's engine, as they did, even
if the plaintiff's engine had been equipped with lights, and
you believe that the plaintiff was guilty of negligence be-
cause the engine was not equipped with white lights, the
plaintiff's right to recover would not be defeated, because
in such case, even if he was guilty of negligence, he was not
guilty of the contributory negligence, and mere negligence
is not a bar." In view of the evidence and the pleadings
I do not think paragraph 12a erroneous. I do think that it
is in conflict with the portions of paragraphs nine and ten
of the charge set forth in the prevailing opinion, wherein

the court charged the jury that the violation or disregard of
the rules referred to was conclusive evidence of negligence
on the part of the plaintiff. But the giving of paragraphs
nine and ten in that particular was error in the defendant's
favor, and was induced by its own requests to so charge.
Even though it be conceded that in an action between a mas-
ter and a servant where the latter is suing the former for an
injury inflicted by his negligence, the latter's violation or
disregard of a reasonable and proper rule of his master may
be conclusive evidence of contributory negligence, neverthe-
less I think it fairly well settled that the failure of a ser-
vant to observe a rule of his master is not necessarily con-
tributory negligence as matter of law in an action where the
servant is suing a stranger for an injury inflicted by the
stranger's negligence. If the care required by the rule was
what a prudent person would have employed, under all the
circumstances, then the servant, in the case between himself
and the stranger, was bound to exercise it, not because of
the rule of his employer, but because of the law requiring
him to exercise ordinary care. And it is quite apparent to
me that the relation between the plaintiff and the defendant
was that of mere strangers. The fact that under some
arrangement between the Rio Grande Western Railway
Company and the defendant the former, in delivering and
receiving freight, was permitted to transfer and operate cars
in the latter's yard, did not create the relation of master and
servant, or any contractual relation, between the defendant
and the employees of the Rio Grande Western Railway
Company; nor did it otherwise render them in privity with
each other. When, therefore, in the case at hand, the de-
fendant, at its own request, induced the court to charge that
the plaintiff's disregard or violation of the rule of his master,
the Rio Grande Western Railway Company, was conclusive
evidence of negligence, the defendant was given an advan-
tage not justified by the law. And where one party asks for
an instruction which is given by the court stating an errone-
ous principle, or one too broad and unqualified, and the
other party asks an instruction which is also given stating a

correct principle, but which limits or qualifies the former instruction, and in some respects contradicts it, the conflict between the two instructions is not an error of which the party can complain who obtains the erroneous instruction. This is but a statement of a long-established and well-recognized doctrine frequently announced by the courts, that a party cannot take advantage of an inconsistency of his own creation. If the jury applied the law as stated in paragraphs nine and ten, but found, as they might, and as the court charged they could, and as evidently they did, that the disregard of the rules and the failure to display a headlight or two white lights on the rear of the engine was not the proximate cause of the collision and injury, then the defendant cannot complain. Neither can it complain if the jury disregarded paragraphs nine and ten with respect to the question that a disregard of the rules was conclusive evidence of negligence, and applied the law in such particular as stated in paragraph 12a, for the jury then applied a correct principle of law to the case and disregarded an erroneous one.

And, lastly, we must be mindful that the defendant did not allege that the plaintiff was guilty of negligence in failing to display lights in accordance with the rules, or in operating an engine in its yard in violation of them, or even in failing to observe a lookout, but that his employer, the Rio Grande Western Railway Company, was negligent in such particulars. The defendant, of course, should not be held responsible for an injury inflicted on the plaintiff through the negligence alone of his master, or of any of its employees. Neither should the defendant be relieved from the responsibility of its own negligence, if its negligence concurred and combined with that of the Rio Grande Western Railway Company, or any of its employees, and as such was the proximate cause of the collision and injury. This is upon the familiar rule that, where two causes combine to produce an injury, the defendant is not relieved of liability because he is responsible for only one of such causes.

I think the judgment of the court below ought to be affirmed.

ON APPLICATION FOR REHEARING.

McCARTY, J.

Counsel for respondent have filed a petition for a rehearing. The jury by their verdict decided every question of fact, whether properly or improperly submitted to them, in favor of respondent, and every assignment of error presented and relied upon by appellant in this court for a reversal of the judgment, except the assignment of error directed to and involving the giving of the latter portion of instruction 12a, was also decided in respondent's favor. His counsel, nevertheless, have reargued and gone over the entire case in the petition for a rehearing. They appear to be as much, if not more, dissatisfied with the conclusions announced in the prevailing opinion on the questions which were decided in their client's favor than they are with the conclusions therein reached on the point upon which the judgment was reversed. The petition contains seventy-nine pages of typewritten matter, and sixty-five pages are devoted to reviewing the questions of fact and propositions of law that were decided in respondent's favor.

The first question argued by counsel in their petition involves the giving of instruction fourteen. The trial court, by giving the instruction, withdrew from the consideration of the jury the question of whether there had been (quoting from the instruction) "any change, modification, or abrogation of the rule requiring switch engines to be equipped with a headlight on the rear of such engines, or, in the absence of such headlight, two white lights." In the opinion we say: "The withdrawal of that question from the jury, whether right or wrong—a question we are not called upon to determine—narrowed this phase of the case to the simple proposition of whether or not the violation of the rule directly contributed to and was a proximate cause of the collision." Counsel contend that this instruction was erroneous, and that we should have expressly so held in the opinion. There are two answers to this contention. The first is that notwithstanding the court withdrew from the consideration of the

jury the question of whether the rules mentioned in the instruction had been "modified, changed or abrogated in any manner or at all," and instructed the jury that, if they found "plaintiff did violate any of the rules of the Rio Grande Western Railway Company and that such neglect on his part proximately contributed to the accident," their verdict should be for the defendant, and the jury having found against appellant on the issue thus submitted to them, the respondent could not have been prejudiced by the giving of the instruction however erroneous it may be; and, second the giving of the instruction was not assigned as error, hence this court was precluded from passing on the question as to whether it was or was not a proper instruction. If respondent desired to have the question reviewed by this court, he should have presented it by a cross-assignment of error as provided by rule twenty-six of this court. This he did not do. It is settled in this jurisdiction that where a respondent has no cross-appeal, and does not assign cross-errors, this court cannot review a decision made by the trial court in favor of appellant. (*Snyder v. Pike,* 30 Utah, 102, 83 Pac. 692; *Betz v. People's Bldg., Loan & Sav. Ass'n,* 23 Utah, 604, 65 Pac. 592; *Sanberg v. Victor Gold, etc., M. Co.,* 24 Utah, 1, 66 Pac. 360.) We also invite attention to 4 Enc. L. & P. 344, and cases there cited which support and illustrate this rule, and 2 Ency. Pl. & Pr. 515.

Counsel also contend that instruction nine was erroneous, and that we should have so held in the opinion. Neither party assigned the giving of this instruction as error; hence the question was not, and is not, before us for review. And, moreover, the questions of fact submitted to the jury by this instruction were decided in favor of respondent. But, since the case is to be retried, we remark that instruction nine is general in its terms, and does not refer to any particular or specific rule of the Rio Grande Company, and that there were other rules introduced in evidence besides the rule requiring switch engines to be equipped with white lights. The following rule was in full force and effect at the time of the

accident, namely: "All signals must be used directly in accordance with the rules; trainmen, *engineers* and firemen *must keep constant lookout for signals.*" (Italics ours.) One of the errors assigned by appellant was that the evidence tending to show a waiver by it of the rule in question was outside of the issues, and that, therefore, its admission was error. In the opinion we hold that the evidence was properly admitted, but we say that the court by giving instruction fourteen withdrew it from the consideration of the jury. In other words, we, in effect, held that the assignment must be overruled for two reasons: First, that the evidence was properly admitted; second, that it was withdrawn from the jury and in effect stricken from the record. Therefore, even if it be conceded that there was some merit to appellant's contention that the evidence was improperly admitted, appellant nevertheless could not have been prejudiced thereby. Counsel is in error in stating that the opinion holds that instruction fourteen was a "proper" instruction. There is not an expression in the entire opinion from which any such inference can be drawn. Counsel in their petition say: "Are your honors not clearly in error in saying, as you do, that instruction 12a is fatal to the judgment because in conflict with instructions nine and fourteen? . . ." This is another error of counsel. The case was not reversed because instruction 12a was in conflict with instruction fourteen, and there is nothing in the opinion from which it can possibly be inferred that the judgment was reversed because of any conflict between these two instructions. A mere casual reading of the opinion will show that instruction fourteen had nothing whatever to do with the reversal of the case. Nor was the judgment reversed because the rear of the engine in question was not equipped with two white lights or a headlight, as counsel assume in their petition. We say in the opinion that the Standard Rules of the American Railway Association were, so far as material to this case, adopted by the two companies. Counsel say in their petition that this is a misstatement of fact. The only testimony on this point was that given by J. M. Davis.

who was a witness for respondent. He testified in part as follows: "That book I have indicated [Exhibit C] is the book of rules of the American Railway Association, Standard Rules. The three companies named in this city operated under the same rules. The Rio Grande worked under the American Railway Association rules at the time of this accident. The particular movement that was made in the yards of the Oregon Short Line Railroad at the time of this accident was goverened by standard rules I have indicated. The Rio Grande, the San Pedro, and the Short Line were all working under these rules at that time."

It is also asserted in the petition that the opinion contains other misstatements of fact, but we have neither the time nor the inclination to devote further space to this phase of the petition, except to say that we have again carefully examined the record, and find that these assertions of misstatements of fact in the opinion are as unfounded as the alleged misstatement of fact which we have just reviewed. We remark, however, that the captious and acrimonious tone of the petition is not to be commended.

Counsel in characterizing the conclusions announced in the opinion, whether in favor of or against respondent's contentions, have made use of language which borders on the offensive. We are disposed, however, in this case to attribute the intemperate language used to the zeal and earnestness of counsel in the presentation of their client's cause rather than to any desire or inclination on their part to show disrespect for this court.

We now come to the point, and the only point, in the case upon which the judgment was reversed, namely, the last six lines—the part we have italicized—of instruction 12a. The reply brief of respondent contains the following statement: "Counsel says that the jury might have found (but for the instruction) that he (Gilbourne) ought to have been keeping a lookout to the north. But they did *not* so find, and they could *not* have done so under the instruction." This is referred to in the opinion as a concession on the part of respondent that the instruction, in effect, withdrew from the

consideration of the jury the question of the alleged negligence of respondent in failing to exercise ordinary care for his own safety at the time of and immediately prior to the collision.   Counsel in their petition for a rehearing say that the use of the word "not" in the matter quoted from their brief was due to a typographical error, and that the quotation should be read with the word "not" eliminated therefrom.   We think it is clear that when thus corrected the sentence containing the word "not" does not express what counsel intended to say, because it then recites that the jury made a finding which, if true, would have justified the jury in returning a verdict in favor of appellant.   We shall therefore eliminate from the opinion the entire quotation and all reference therein made to the matter quoted.   That the instruction withdrew from the consideration of the jury the question of whether respondent was negligent in leaving the cab and taking up and occupying a position on the pilot beam of the engine, and also the question whether he was negligent in failing to observe and obey the signals given by the witness Love is, we think, too clear to admit of serious controversy.   Nor do counsel now contend, if we correctly understand their position, that the instruction did not have that effect.   The contentions now made are:   (1)   That neither the act of respondent in leaving the cab and taking a position on the pilot of the engine nor his failure to observe and obey the signals given him by Love constituted negligence on his part; and (2) that assuming, but not conceding, his acts and omissions in these respects constituted negligence, that such negligence was not the proximate cause of the accident.

It is urged that the facts and circumstances, as disclosed by the record, show that, if respondent, had been keeping a lookout for approaching cars, the collision, nevertheless, in all probability, would have occurred.   But it does not nececssarily follow that respondent would have suffered the injury complained of, nor can we say as a matter of law that he would have suffered any injury if he had remained in

39 Utah—8

the cab of his engine, or had not taken a position on the pilot thereof, or had observed and obeyed the signals given by Love. It may be that any degree of care and vigilance respondent could have exercised on the occasion in question would not have enabled him to avert the collision. If this were conceded, it would not end the inquiry as counsel seem to contend. There is the further question, namely, could respondent by the exercise of ordinary care have prevented injury to himself, and was he exercising such care at the time the accident occurred? In other words, could he, by the exercise of ordinary care, have avoided the consequences of the collision, so far as they affected him personally, and did he exercise such care? In Beach on Contr. Neg., section 9 (3d Ed.), the author says:

"Although the defendant may have been guilty of a want of ordinary care tending to produce the injury complained of, still the plaintiff will not be entitled to recover damages if he could by the exercise of ordinary care have avoided the consequences of the defendant's negligence, or, what is the same thing, that he cannot recover when his own negligence proximately contributed to or produced the injury of which he complains. This rule not only commends itself to our instinctive sense of justice, since what can be a more reasonable requirement than that a man must take ordinary care of himself, or suffer the consequences, but it is also in harmony with the spirit of the law in other respects, in that it puts every man upon his guard, and suffers him not to take advantage of his own lack of prudence or care, by first running into danger, and then calling upon some one else to recompense him in damages for what he suffers. It is a principle of law so consonant with justice and right reason that it can never be overthrown."

In 29 Cyc. 519, it is said: "Thus one who voluntarily assumes a position of danger, the hazard of which he understands and appreciates, cannot recover for resulting injury, unless there is some reason of necessity or propriety to justify him in so doing." In this case there is evidence tending to show that, after respondent had cleaned the glass of the headlight on the engine on the occasion in question, he took up and occupied a position in front of the engine, and that he and the other members of the switching crew, except Kelley, who had gone to the office, had been leaning

against or sitting on the pilot beam of the engine from seven to fifteen minutes when the collision occurred. And the evidence of Love that he gave respondent a signal to move the engine forward onto another track is uncontra- dicted. But counsel in their petition assert "that the only testimony in the record in regard to the time when this signal was given by Love is that it was given about the time of the collision," and not in time "to prevent the accident." The only evidence in the record on this point is the evidence of Love. He testified in part as follows: "Our train I knew was up there coming down from the puzzle switch. They were probably three blocks from Gilbourne's engine at that time. At that time I thought the Rio Grande engine would take my signals and come out of there. . . . I sig- naled them several times. They didn't move. . . . Then I whistled with my mouth to attract their attention. That was a shrill, sharp whistle. They would be able to hear it, but they paid no attention apparently, because it did not move. . . . I could not tell how far away our train was when I whistled. I don't think there was immediate danger at that time. I started down toward them, and, when I got about half way from where I stood, our crew came up and hit them. . . . When the actual collision occurred, I was possi- bly one hundred and twenty-five yards south of Gilbourne's engine." According to this evidence, which is not denied, Love, after he had given several signals to respondent with his lantern, and had endeavored to attract his attention by giving a shrill whistle with his mouth, had time to go, and did go, a distance of one hundred and twenty-five yards before the collision occurred, and the Oregon Short Line train moved a distance of three blocks after the first signal was given by Love before it collided with respondent's engine. It is therefore idle to contend, in the face of this record, that Love's signals were almost simultaneous with the hap- pening of the accident. But counsel in their petition say: "We think that it is too clear for argument that if it be assumed that plaintiff saw Love's signal and neglected to move in obedience to it, and that, if he had moved in obedi-

ence to it, the collision would not have occurred, that still his failure to move in obedience to the signal was not a proximate cause of the accident." According to this argument, if Gilbourne, instead of taking a position on the pilot beam of his engine on the occasion in question, had lain down on the track immediately in front of it and gone to sleep, and was in that situation when he was injured, he still would be entitled to recover, provided he had taken the precaution, before taking his nap, to equip his engine with the customary and necessary danger signals. The mere statement of such a proposition is sufficient to refute and overturn any argument that can be made in favor of it.

In the prevailing opinion we remark that the respondent was holding his engine on the main track along which he knew a train might pass at any moment. In the petition this is characterized as a "misstatement of fact," and we are taken to task for making it. Counsel, however, in correcting this "misstatement," say: "He was standing on the main line, but the main line is a track on which trains run according to schedule," and that "nothing in the record shows that any train was due about the time of the accident." Therefore respondent, if we correctly sense and grasp the logic of counsel's argument, having equipped his engine with the necessary danger signals, could, with impunity, and without assuming the risks, disregard signals that were given for his safety and remain upon the pilot beam of his engine, or, for that matter, as herein suggested, go to sleep on the track in front of the engine, oblivious to all that was going on around him in this busy railroad yard, until some train that was being run according to schedule should pass along the track. We cannot assent to any rule or doctrine that would lead to such an absurdity. Counsel further say, by way of argument, that "this is not like the case of a man crossing a railroad track where trains may be expected at any moment. One crossing a railroad track without looking may fairly be said to be in a situation where in the light of attending circumstances he ought to forsee that he is liable to be run over and injured." Nor may a man who is

operating a switch engine in a busy railroad yard stop his engine on the main track along which trains and other switch engines frequently pass, and close his eyes and become indifferent to his surroundings. In such case, it is as much his duty to use ordinary care to protect himself and the equipment under his control from injury by collision as it is the duty of the pedestrian or teamster who is crossing a railroad track to use due care to avoid collision. In the case of the engineer, ordinary care means something more than displaying danger signals. Notwithstanding he may have done all that common prudence, ordinary care, and the rules under which he is operating the engine require to protect the engine, he is still required to continue to exercise ordinary care for his own safety. What is ordinary care in such cases is generally a question of fact for the jury to determine. The court in this case charged the jury that if they believed that the "red light burning on the tender end of the engine . . . was the usual and customary manner of warning other trains approaching on the same track, or was all the warning that ordinary care required, and that it was sufficient to prevent other trains or cars being run against the plaintiff's engine, if persons operated them with ordinary care, then the plaintiff fully met the requirements of ordinary care on his part in this respect." Up to this point the instruction refers to certain specific precautions that ordinary care required respondent to take, namely, the giving of customary warnings and signals to other train crews operating in the yard, of the presence of his engine on the track at the point where the collision occurred. Respondent, notwithstanding his engine may have been equipped with the necessary and customary danger signals at the time he stopped and was holding it on the track where the accident occurred, was nevertheless required to use his senses of sight and hearing, and to otherwise exercise ordinary care for his own safety. And this duty continued as long as he remained with and in charge of the engine. After giving that part of instruction 12a, above quoted, the court invaded the province of the jury, and in

effect instructed them that neither respondent's act in leaving the cab and taking a position on the pilot of his engine, nor his failure to observe and obey the signals given by Love, was negligence. Whether these acts and omissions constituted negligence were questions for the jury to determine, and the court clearly committed prejudicial error in withdrawing them from the consideration of the jury.

The petition for a rehearing is denied. We have made a few formal changes in the prevailing opinion, and the case will be ruled and decided by the opinion as modified and rewritten, and the opinion as changed and modified will be published as the opinion of the court. The opinion as first written will remain on file, but will not appear in the published reports.

FRICK, C. J., concurs. STRAUP, J., thinks a rehearing ought to be had.